## FICKLEN v. SHELBY COUNTY TAXING DISTRICT.

ERROR TO THE SUPREME COURT OF THE STATE OF TENNESSEE.

No. 97. Argued March 18, 21, 1892. — Decided April 11, 1892.

F. and C. & Co. were commercial agents or brokers, having an office in Shelby County, Tennessee, where they carried on that business. In 1887 they took out licenses for their said business, under the provisions of the statute of Tennessee of April 4, 1881, (Sess. laws 1881, c. 96, § 9, 111, 113,) imposing a tax upon factors, brokers, buyers or sellers on commission, or otherwise, doing business within the State, or, if no capital be so invested, then upon the gross yearly commissions, charges or compensation for said business. During the year for which they took out licenses all the sales negotiated by F. were made on behalf of principals residing in other States, and the goods so sold were, at the times of the sales, in other States, to be shipped to Tennessee as sales should be effected. During the same time a large part of the commissions of C. & Co. were derived from similar sales. They had no capital invested in their business. At the expiration of the year they applied for a renewal of their license. As they had made no return of sales, and no payment of percentage on their commission, the application was denied. They filed a bill to restrain the collection of the percentage tax for the past year, and also to restrain any interference with their current business, claiming that the tax was a tax on interstate commerce. *Held,*

(1) That if the tax could be said to affect interstate commerce in any way it did so incidentally, and so remotely as not to amount to a regulation of such commerce;

(2) That under the circumstances the complainants could not resort to the court, simply on the ground that the authorities had refused to issue a new license without the payment of the stipulated tax.

*Robbins* v. *Shelby County Taxing District*, 120 U. S. 489, examined and distinguished from this case.

This case having been submitted on briefs, the submission was set aside by the court, and an oral argument ordered. When the case was reached neither party appeared by counsel, but an offer was again made to submit on the briefs. The court thereupon ordered the case dismissed for want of prosecution in the manner directed by its previous order; but subsequently this dismissal was set aside on motion, and argument was heard.

This case was submitted January 4, 1889, under the 20th rule. On the 4th of February, 1889, the submission was set aside, and the case was restored to the docket, to stand for oral argument. On the 6th of November, 1891, it was assigned for argument. When reached on the 24th of that month, an offer was again made to submit on the briefs. The court thereupon ordered the case dismissed for failure to prosecute it in the manner directed by the court.

*Mr. W. Hallett Phillips,* December 21, 1891, on behalf of the plaintiffs, moved the court to rescind the order dismissing the cause, to restore the same on the docket, and to set it down for oral argument, and, in support of the motion, submitted the following statement:

"The cause was set down at the present term for oral argument at a day certain. Counsel not then appearing, it was, on November 24, 1891, ordered that the cause be dismissed for want of prosecution in the manner directed.

"The court stated as the ground of its action that counsel for plaintiffs in error had declined to comply with its order.

"I am requested to state by the counsel referred to that they disclaim any purpose to disregard the order, and to express their extreme regret that the court should have taken a different view.

"Counsel, not being familiar with the practice of this court in such matters, supposed that the order setting down the cause for argument was intended to invite an oral discussion and not to direct one.

"While their error may not be regarded as a legal justifica-

tion, they trust it may be sufficient to show that their action was not intended as a discourtesy to the court or an intentional disobedience of its authority.

"Plaintiffs in error represent that the matter involved is of much consequence to them and others similarly situated.

"The case involves an important constitutional question, which it is hoped may receive the final decision of your honors.

"Arrangements have been made with counsel to argue the case, if the court, in its indulgence, should accord the opportunity."

The cause was thereupon restored to the docket, and was duly argued. The case, as stated by the court, was as follows:

This was a bill filed in the Chancery Court of Shelby County, Tennessee, by C. L. Ficklen, and Cooper & Company, against the taxing district of Shelby County, and Andrew J. Harris, County Trustee.

The bill alleged that complainants were "commercial agents or merchandise brokers located within the taxing district of Shelby County, where their respective firms rent a room for the purpose of keeping and, at times, exhibiting their samples, and carrying on their correspondence with their respective principals; that they use no capital in their business; that they handle or deal in no merchandise, and are neither buyers nor sellers; they only engage in negotiating sales for their respective principals; they do precisely the same business that commercial drummers do, the only difference being that they are stationary, while the commercial drummers are transitory, and go from place to place and secure a temporary room at each town or city in which to exhibit their samples. That each solicits orders for the sales of the merchandise of their respective principals and forwards the same to them, when such orders are filled by shipping the goods direct to the purchasers thereof in the county of Shelby."

It was then averred that all of the sales negotiated by complainant Ficklen were exclusively for non-resident firms, who resided and carried on business in other States than Tennessee, and all the merchandise so sold was in other States than Ten-

nessee, where the sales were made, and was shipped into Tennessee, when the orders were forwarded and filled.

That at least nine-tenths of the sales negotiated and effected by complainants Cooper & Company, and at least nine-tenths of their gross commissions, were derived from merchandise of non-resident firms or persons, and which merchandise was shipped into Tennessee, from other States, after the sales were effected.

That section 9, chapter 96, of the Acts of 1881, of Tennessee, (Sess. laws of 1881, pp. 111, 113,) made subsection 17 of section 22 of the Taxing District Acts, (Taxing District Digest 50,) provides:

" Every person or firm dealing in cotton, or any other article whatever, whether as factor, broker, buyer or seller, on commission or otherwise, ($50) fifty dollars per annum, and in addition, every such person or firm shall be taxed *ad valorem* (10 cts.) ten cents on every one hundred dollars of amount of capital invested or used in such business; *Provided, however*, that if such person or firm carry on the cotton or other business in connection with the grocery or any other business, the capital invested in both shall only be taxed once; but such person or firm must pay the privilege tax for both occupations; *And provided, further*, that if the persons taxed in this subsection have no capital invested, they shall pay 2½ per cent on their gross yearly commissions, charges or compensations for said business, and at the time of taking out their said license, they shall give bond to return said gross commissions, charges or compensation to the trustee at the end of the year, and at the end of the year they shall make return to said trustee accordingly, and pay to him the said 2½ per cent."

Complainants charged that, as they were neither dealers, buyers nor sellers, but only engaged in negotiating sales for buyers, they were not embraced within the meaning of said section, and further stated that they had each heretofore paid the privilege tax and the income tax, except for the year 1887, and had tendered the privilege tax of $50 and costs of issuing license for the year 1888 to the trustee, who refused to accept

the same unless complainants would also pay the income tax for the year 1887.

From the bill and exhibits attached it appeared that complainants in January, 1887, each paid the sum of $50 for the use of the taxing district, and executed bonds agreeably to the requirements of the law in that behalf, and received licenses as merchandise brokers within the limits of the district for the year 1887, and that in January, 1888, they tendered, as commercial brokers, to the trustee fifty dollars and twenty-five cents, each, as their privilege tax and charges for the year 1888, which he refused to accept because they refused to pay for the year 1887 two and one-half per cent upon their gross commissions derived from their business for the year 1887, although they executed bonds in January, 1887, to report said gross commissions.

Complainants charged that the law in question was in violation of the commerce clause of the Constitution of the United States and also of the Constitution of Tennessee, and prayed as follows:

"That an injunction issue to restrain the defendants or either of them from instituting any suit or proceeding against them or either of them for the collection of said $2\frac{1}{2}\%$ tax upon their respective gross commissions from their said business or from issuing any warrant for their arrest for their failure to pay the same for the year 1887, and that defendants be also restrained from in any way interfering with them in the carrying on their said business for the year 1888; and upon final hearing they, the defendants, be restrained perpetually from collecting from them or either of them said $2\frac{1}{2}$ per cent tax upon their said gross commissions from their said business, and from collecting said privilege tax of $50, and they pray for general relief, and will ever pray," etc.

To this bill the defendants filed a demurrer, which was overruled by the chancellor, and, the defendants electing to stand by it, a final decree was entered, making the injunction perpetual in behalf of Ficklen as to the entire tax, including the $50; and, as to Cooper & Company, adjudging that they were legally bound to pay the sum of $50 and the tax of two

and one-half per cent on their commissions, to the extent that those commissions were upon sales of property owned by residents of Tennessee, and perpetuating the injunction in all other respects.

From this decree the defendants prayed an appeal to the Supreme Court of the State, and that court decided that the act of the legislature in question was not in violation of the state constitution, and, further, that "inasmuch as it appears from the bill that the complainants at the beginning of the year 1887 applied for and received, respectively, license to carry on the business of commission brokers without qualification, and that they, the complainants, held said license throughout the year 1887, complainants were chargeable with the privilege tax, as fixed by the act aforesaid, without regard to the amount or character of the business carried on under said licenses or the places of residence of their principals, and that complainants must have reported and paid 2½ per cent on the gross commissions received by them during the year 1887 before they could have become entitled to licenses for the year 1888. . . . That when at the beginning of the year 1888 the complainants applied for license as merchandise brokers they were rightfully required (1) to report and pay 2½ per cent on their commissions received during 1887, and (2) to pay the fixed charge of $50 and give bond to report their gross commissions at the end of the year 1888. . . . That the said act is not, as to these complainants, violative of article first, sec. 8, of the Constitution of the United States, by which the power to regulate commerce between the States is conferred upon the Congress of the United States; and . . . that complainants, having applied for, accepted and held for and during the year 1887 unqualified license as commission brokers, and having applied for the same unqualified license for the year 1888, cannot question the validity of the said act as being in conflict with said provisions of the Constitution of the United States, for that the said complainants were not entitled to the said license upon the facts stated in the bill, whether the business actually done and theretofore conducted by them was or was not exonerated from said

privilege tax under the said provision of the Federal Constitution."

The decree of the chancellor was accordingly reversed, the demurrer sustained, and the bill dismissed, whereupon a writ of error was taken out from this court.

*Mr. W. Hallett Phillips* for plaintiffs in error.

The single question is whether the negotiation in one State, by samples, of sales of goods in another State, can be taxed by the State in which the negotiation is carried on. Is not a state license or tax on such an occupation an unconstitutional restriction upon the business or calling of introducing into one State the goods and wares that are manufactured in another? It seems to us that this controversy was adjudicated in *Robbins* v. *Shelby County*, 120 U. S. 490. In that case this court declared that the negotiations of sales of goods which are in one State, for the purpose of introducing them into the State in which the negotiation is made, is interstate commerce. It was also agreed that to tax the offer to sell such goods before they are brought into the State is a tax on interstate commerce itself. The very ground of the decision was that the Federal Constitution prevents the levy of a state tax, or the requirement of a license for making negotiations in the conduct of interstate business. It has frequently been decided by this court, and more especially in late years, that a tax which operates as a burden against the introduction and sale of the products of other States is a regulation of interstate commerce, and a tax to do business is a tax on the business to be paid by and out of the business. In the present case the effect and operation of the tax is to exact a duty for permission to exercise interstate commerce within the State of Tennessee. It is for the privilege of making contracts within the county of Shelby to sell merchandise, the product of other States, for merchants of such States to residents of Tennessee, that the tax is exacted. It is for the faculty of doing that business that the license is required. Now there can be no question but that a law requiring a person to take out a license in order to confer upon him the faculty or privilege of conducting a busi-

ness, is a regulation of that business; and when the law requires the plaintiffs to take out a license in order to acquire the privilege of conducting interstate commerce, that is a regulation of interstate commerce. Here business between States is conducted by means of agents called merchandise brokers, and it is not in the power of one State to prohibit such business, unless a license is taken from the State in which the agent is located and where the business is partially transacted. It is the *business* which is taxed and it is that fact which constitutes the invalidity of the tax. Its constitutionality can in nowise depend on the fact that the agent resided in the State of Tennessee, or that the business was partially transacted there. If the business was interstate, it was not subject to exaction in any form by the State. The validity of a tax must necessarily be determined by the nature of the business taxed, and not by the residence of the agent upon whom the tax is in form levied. These principles have been so frequently declared by the court as to make them axioms of constitutional jurisprudence. It is argued that an exception to such general rules is created by the particular facts of this case. It is said that the business transacted by the plaintiffs in error was a general business, and that they were empowered to do a state, as well as an interstate business, and that the fact that one of the parties did entirely an interstate business, and the other did almost entirely such a business, cannot exempt them from regulation and taxation by the State, since they were authorized to do also a business confined to the State. It seems to us that this argument simply raises the question that the law made no discrimination as against interstate business. In other words, it imposes a tax and exacts a license for doing the business of a merchandise broker. But does the fact that under a license demanded by the law, a strictly local business as well as interstate business might be transacted, confer any right upon the State of Tennessee to demand a license tax for doing interstate business or empower it to levy a tax upon the gross proceeds of such interstate business? A negative answer is furnished by the decisions of this tribunal. The tax is not less objectionable, the nature of the exaction is not changed,

because it does not discriminate in favor of domestic business.

If the fact that Ficklen & Company might have done business purely internal to the State of Tennessee, affords excuse for the State of Tennessee levying a tax upon the interstate business transacted by them, what becomes of the reasoning of this court in its decisions regarding the taxation of express companies, telegraph companies and of other institutions and persons engaged in the transaction of interstate commerce? In each of these instances the business done or which might have been done was of a general nature, partly domestic and partly interstate, but this court held that that fact afforded no justification for a State levying a tax upon interstate commerce transactions. Take for instance the case of *Telegraph Co.* v. *Texas*, 105 U. S. 460, a tax on the business of telegraphing. There the legislature had imposed an occupation tax upon every telegraph company doing business within the State, of one cent for every message sent and one-half for every message less than full rate. The company did a general business, a large portion of its messages being confined to the State of Texas, and a large portion going beyond the boundaries of that State. The company was required by the Texas statute, to report the number of all the messages sent, and the comptroller of the State was required to exact the tax according to the reports. The company at first submitted to the tax, but afterwards it refused to pay it further, and action was brought by the State to compel the company to make payment. The answer of the company was that while it was transacting business within the State of Texas a large portion of its business constituted interstate commerce, and was therefore free from state taxation. This contention was upheld and as *to such business* the tax was declared to be unconstitutional. The State was left free to exact this tax as to all business of a purely domestic character.

It has been supposed that the decisions of this court holding that a State had power to tax all property within its *situs*, although employed in interstate commerce, had some bearing upon the controversy, but it is not perceived that this is so, for the vital distinction is that in the one case the tax is on prop-

erty situated within the State, while in the present case, the tax
is for the privilege of introducing the merchandise of other
States within the State. It is simply a tax on account of the
negotiation of sales of non-resident merchandise, and a license
for the privilege of doing interstate business. As has been
frequently emphatically declared by this court, a State cannot
make it a state privilege to transact interstate commerce, but,
as said in the Robbins case, and as it has been frequently
declared before, when goods are once sent from one State to
another State for sale or in consequence of a sale, they become
part of its general property and amenable to its laws. The
point has also been made that this court in the Robbins case
held, that the State of Tennessee had a conceded right to tax
Tennessee drummers, but it is to be observed that the very
paragraph in which this announcement is made, shows that
the court intended by this expression to denote drummers
transacting the domestic business of Tennessee; for the court
said as a reason for this announcement, that the State might
tax its own *internal* commerce, but that did not give it any
right to tax interstate commerce. Nor does it seem to us that
the reference made by opposing counsel to the recent decision
of this court in *Maine* v. *Grand Trunk Railway*, 142 U. S.
217, affords any argument in favor of the present tax. There,
the tax was for the privilege of a foreign corporation transact-
ing business within the State of Maine. This court declared
that the tax in question was an excise tax for the privilege of
operating a railroad within the State. The railroad within
the State was constructed under the franchise of the State, and
as declared by this court, the privilege rested entirely in the
discretion of the State; it could be conferred upon such con-
ditions as the State in its judgment might deem most condu-
cive to its interests. The character of the tax or its validity
did not depend upon the mode adopted in fixing its amount
or the times of its payment. Therefore, while in form, the
tax was to be ascertained by a reference to the gross receipts,
this court was careful to say that this was merely for the pur-
pose of ascertaining the value of the business done, and thus
obtain a guide to the amount of the excise which should be

levied, and that there was no levy on the receipts themselves either in form or in fact. If the amount ascertained had been specifically imposed in the first instance, the court observed, no objection to its validity would have been pretended. In the case at bar, there can be no pretence but that the tax is a tax on the gross receipts of the business, both in form and in effect and inasmuch as in the case of one of the parties that business was wholly interstate, and in the case of another of the parties, almost entirely so, the case falls within the settled adjudications of this court, that a tax cannot be laid on the receipts derived from interstate business. Nor are the rights of the plaintiffs in error in anywise prejudiced by the fact that they had in the past paid the tax, or that they had for the year previous to filing the bill, given a bond to return the amount of the proceeds of their business for that year. The object of the bill filed in 1888, was to enable these parties to transact their interstate business for the future free from state interference, whether by way of taxation or license, and thus protect their constitutional rights. And the specific prayer was not only that the defendant should be restrained from issuing warrants for their arrest for their failure to pay the tax on the commissions for 1887, or from instituting suit against them on that behalf, but it also prayed an injunction against state interference in the carrying on their interstate business for the year 1888, and for all future time. Some intimation has been made in the opposing argument that the parties should have contented themselves with doing their interstate business, and should not have held themselves out as general merchandise brokers. But they could not have transacted their interstate business without either taking out a license under the law, or subjecting themselves to the criminal laws of the State. The taxing act itself declared every such business to be a taxable privilege, and the exercise of any such privilege without first paying the tax was declared to be a misdemeanor. We submit that the plaintiffs in error were not compelled to adopt the alternative of violating the law of the State or refraining from doing business. The fact that they had in the past paid the license fee for transacting their business, or had given a bond

for the year 1887, cannot estop them from showing the uncon-
stitutionality of this legislation. We cannot perceive what
possible effect this can have upon their right to demand the
interposition of the judiciary to prevent the future interference
by the State with their constitutional rights. We cannot see
how the court can uphold the decision of the Supreme Court
of Tennessee, without overruling the underlying principle of
the Robbins case. We can perceive no distinction between
that case and this except in the fact that in the Robbins case,
the party negotiating the sale was transitory in Tennessee, but
in the present case permanent. The fact that the business was
partly carried on within the State of Tennessee does not sub-
ject it to state burden, if in its nature it is interstate business,
because the power of the general government to regulate com-
merce does not stop at the borders of a State but permeates it.
Formerly, it is true, it was the opinion of this court that a tax
on business carried on within the State, and without discrimi-
nation between its citizens and citizens of other States, might be
constitutionally imposed. This principle was the basis of the
decision in the case of *Osborne* v. *Mobile*, 16 Wall. 479, but
that decision has been directly overruled, and the principle no
longer constitutes the doctrine of this court. *Leloup* v. *Mobile*,
127 U. S. 640, 645. It is true, Judge Bradley in his enumeration
in the Robbins case, of the subjects of state taxation, specifies
taxation upon avocations and employments pursued within the
State not directly connected with foreign or interstate com-
merce. But here the business as declared in that same decis-
ion, *constitutes interstate commerce*, and therefore, must be free.
As declared by this court in *Fargo* v. *Michigan*, 121 U. S. 230,
244, the proposition had often been made that a State can by
way of a tax on business transacted within its limits regulate
such business, and that proposition has been made as a defence
to the allegation that the taxation was an interference with
interstate commerce. But the court had always said when
the business *was commerce itself* and *commerce among the
States*, the constitutional provision could not thereby be evaded.
It is true, in the present case, the tax is in form a tax on the
broker, but the inquiry must be upon what does the tax really

fall? The Tennessee law answers this inquiry; the tax is one on *the business done.* The constitutionality of a state tax cannot be determined by the form or agency through which it is collected, but by the subject upon which the burden is laid. *State Freight Tax Case,* 15 Wall. 232. The decision of this court in *Philadelphia Steamship Co.* v. *Pennsylvania,* 122 U. S. 326, shows that a tax on gross receipts derived from interstate commerce is void, and so likewise, a tax on the "gross receipts derived from business done in this State" is void when levied on a telegraph company as far as concerns messages carried either into the State from without, or from within the State to another State. *West. Un. Telegraph Co.* v. *Alabama,* 132 U. S. 472, 477. The case of *McCall* v. *California,* 136 U. S. 104, 110, is in direct line with the preceding decisions. There the tax was for the privilege of maintaining an agency within the State of California, for soliciting business for railroads, and the business actually done by the agent taxed, was that of soliciting business for an interstate railroad. The tax was declared void, as being a tax upon a means or occupation of carrying on interstate business pure and simple. Without a further discussion of cases, we refer to those of *Norfolk &c. Railroad* v. *Pennsylvania,* 136 U. S. 114, where it was held that a State could not exact a license for the privilege of keeping a railroad office within the State, when the business done or largely done by the railroad was interstate commerce. The tax was one upon a means or instrumentality of such commerce. Also to *Crutcher* v. *Kentucky,* 141 U. S. 47, where it was held, that a license could not be required of agents of express companies before they were authorized to carry on business within the State, and this for the reason that it embraced interstate business as well as business wholly within the State, and therefore not within the power of the State.

In conclusion, we content ourselves with a particular reference to *Leloup* v. *Mobile, supra,* where it was determined that the State of Alabama could not compel a telegraph company to pay a license fee for the transaction of business within the State, although the telegraph company did a *general business.* The determination of the court was that the tax affected the

entire business of the company, interstate as well as internal, and *for that reason* it was void.

*Mr. Henry Craft* filed a brief for plaintiffs in error.

*Mr. S. P. Walker* for defendant in error.

It appears by the bill that all the principals of Ficklen & Co. are residents of other States; and that nine-tenths of the business of Cooper & Co. is done for principals of other States. Upon this state of facts it was held by the chancellor that Ficklen & Co. were not liable, either for the fixed charge of $50, or the $2\frac{1}{2}$ per cent on commission; and that Cooper & Co. were liable for the fixed charge of $50 and for one-tenth of the $2\frac{1}{2}$ per cent on commissions. This ruling, based on the doctrine of non-interference with interstate commerce, was reversed by the Supreme Court of the State, and the plaintiffs in error adjudged liable for the whole tax, as fixed by the statute.

This court from the case of *Brown* v. *Maryland*, 12 Wheat. 419, to the very recent cases of *Robbins* v. *Shelby County Taxing District*, 120 U. S. 489; *Leloup* v. *Port of Mobile*, 127 U. S. 640; and *Crutcher* v. *Kentucky*, 141 U. S. 47, has so frequently considered the question involved in this case, that it is not our purpose to attempt an extended review or discussion of the authorities. We shall only, therefore, as briefly as possible, undertake to show that the tax in question is not a regulation of interstate commerce.

I. The tax in question is (as was held by the state court) a privilege tax, graduated by the amount of commissions received. If, as complainants contend, they were not taxable, then *they did not need and should not have taken out the license.* Having taken it out they must pay what they in effect *agreed* to pay for it.

It appears from the bill that complainants are, and hold themselves out as, general merchandise brokers. For 1887 they took out license as such. For 1888 they applied for the same character of license.

The fact that their principals are non-residents of the State

is a fact which, though true on the day the bill was filed, might not be true the next day. If, therefore, plaintiffs are right in their contention, the true method of procedure by them would have been simply to have contented themselves with *private agencies* of given non-resident principals, instead of assuming the rôle of general " commission merchants."

The case is not within the principles of the opinion in *Robbins* v. *Shelby County*, 120 U. S. 489. (*a*) Robbins was the representative of *one* non-resident firm, and the case was treated as if his principals had come into the State to make sales, and the State had undertaken to seize and tax them. (*b*) The tax was held to be in effect not a tax on Robbins, but on his principals. Here the reverse is clearly true.

So, too, it is distinguishable from *Cook* v. *Pennsylvania*, 97 U. S. 566. In that case, the State of Pennsylvania exacted a certain percentage of the *proceeds* of foreign goods sold at auction, for the privilege of thus selling them; and the tax was held to be a duty on imports, and unconstitutional, under the principles of the leading case of *Brown* v. *Maryland*, 12 Wheat. 419. In this case the State of Tennessee requires that every person pursuing the vocation of merchandise broker, shall pay a vocation tax of two and one-half per cent of the commissions earned. Can the tax be disputed, on the fact that the goods sold were, at the time of the sale, in another State, and that, as between the principals — buyer and seller — the transaction was one of interstate commerce? Is the State's exaction so directly connected with the commerce as to make it a burden upon or a regulation of interstate commerce? We submit that it is not a tax upon the commerce between the States, but that it is what it purports to be — a tax upon the broker himself, graduated by the amount realized by him from the transaction, and that, except in that indirect and remote way, which this court has never allowed to affect the validity of state taxation, it has no tendency to prevent or burden the interstate commerce itself.

The ultimate question being whether or not the power of the State to lay a vocation tax on one of its resident citizens, graduated according to the profits realized by him from the

pursuit of that vocation, can be denied on the ground that the citizen is engaged, wholly or partially, in negotiating sales be-- tween resident and non-resident merchants of goods situated in another State, we will examine such of the decisions of this court as seem to bear most pertinently on the question, with- out in the least attempting an exhaustive citation or analysis of all the cases arising under the interstate commerce clause of the Constitution.

This court has often ruled that the State has power to tax all property having a *situs* within its limits; and that property employed in interstate commerce is not on that account with- drawn from the power to tax. There must not, however, be any discrimination against such property because it is so used, nor against property brought from other States or countries because of that fact. *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 196, 206; *Pullman's Palace Car Co.* v. *Pennsylva- nia,* 141 U. S. 18; *Marye* v. *Baltimore & Ohio Railroad,* 127 U. S. 117; *Woodruff* v. *Parham,* 8 Wall. 123.

In the latter case the court said: "The merchant of Chicago who buys his goods in New York and sells at wholesale in the original packages, may have his millions employed in trade for half a lifetime and escape all state, county and city taxes; for all that he is worth is invested in goods which he claims to be protected as imports from New York. Neither the State nor the city which protects his life and property can make him contribute a dollar to support its government, improve its thoroughfares or educate its children. The merchant in a town in Massachusetts who deals only in wholesale, if he pur- chase his goods in New York, is exempt from taxation. If his neighbor purchase in Boston he must pay all the taxes which Massachusetts levies with equal justice on the property of all its citizens. These cases are mentioned as illustrations. But it is obvious that if articles brought from one State into an- other are exempt from taxation, even under the limited circum- stances laid down in *Brown* v. *Maryland,* the grossest injustice must prevail, and equality of public burdens in all our large cities is impossible."

Conceding that this case is not in harmony with later utter-

ances of the court upon the exact point decided, the language above quoted is fully supported by such cases, so far as concerns the general proposition that the States have full power of taxation over all property within their limits, subject only to the qualifications already shown. The *subjects of commerce* are not exempt from state taxation, provided they be not taxed *as such* — taxed in such manner as that the burden is unequal because of the use to which they are put.

II. Advancing from the question of the power to tax property to that of taxing vocations, business, franchises, we first notice the case of *Wiggins Ferry Co.* v. *East St. Louis*, 107 U. S. 365, 374. In that case the municipality imposed an annual license fee of $100 on the ferry company, whose boats plied between East St. Louis and St. Louis. The company was chartered by the State of Illinois and domiciled in East St. Louis, the case differing in that respect from the case of *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196. The court said: "The exaction of a license fee is an ordinary exercise of the police power by municipal corporations. When, therefore, a State expressly grants to an incorporated city, as in this case, the power to license, tax and regulate ferries, the latter may impose a license tax on the keepers of ferries, although their boats ply between landings lying in two different States, and the act by which this exaction is authorized will not be held to be a regulation of commerce."

The cases of *Asher* v. *Texas*, 128 U. S. 129, and *Stoutenberg* v. *Hennick*, 129 U. S. 141, were identical, in all essential particulars, with that of *Robbins* v. *Shelby County*.

In the case of *McCall* v. *California*, 136 U. S. 104, 113, the tax was "for every railroad agency, $25 per quarter." McCall became personally involved merely by reason of his representation of the railroad company, and the effort to enforce the tax against him personally by fine and imprisonment. The court, in the opinion in that case, commented upon the case of *Smith* v. *Alabama*, 124 U. S. 465, where the statute in question was one imposing a license tax on locomotive engineers, and said: "We held, however, that the statute in question was not in its nature a regulation of commerce;

that so far as it affected commercial transactions among the States *its effect was so indirect, incidental and remote* as not to burden or impede such commerce, and that it was not therefore in conflict with the Constitution of the United States or any law of Congress." The California tax on the railroad agency, an agency that was instituted " to increase, and [that] doubtless did increase, its interstate passenger traffic," was held invalid, for the reason that " according to the principles established by the decisions of this court [it was] a tax upon a means or an occupation of carrying on interstate commerce, pure and simple."

Perhaps the doctrine of the State's power to tax and its proper limits are found best stated in *Philadelphia Steamship Co.* v. *Pennsylvania*, 122 U. S. 326, 341, 342. This court there said : " The tax in the present case is laid upon the gross receipts for transportation *as such.* Those receipts are followed and caused to be accounted for by the company, dollar for dollar. It is those specific receipts, or the amount thereof, (which is the same thing,) for which the company is called upon to pay the tax. They are taxed, not only because they are money, or its value, but *because they were received for transportation.* No doubt a ship-owner, like any other citizen, may be personally taxed for the amount of his property or estate, without regard to the source from which it was derived, whether from commerce, or banking, or any other employment. But that is an entirely different thing from laying a special tax upon his receipts in a particular employment. If such a tax is laid, and the receipts taxed are those derived from transporting goods and passengers in the way of interstate or foreign commerce, no matter when the tax is exacted, whether at the time of realizing the receipts, or at the end of every six months or a year, it is an exaction aimed at the commerce itself, and is a burden upon it and seriously affects it. A review of the question convinces us that the first ground on which the decision in *State Tax on Railway Gross Receipts* was placed is not tenable; that it is not supported by anything decided in *Brown* v. *Maryland;* but, on the contrary, that the reasoning in that case is decidedly against it.

" The second ground on which the decision referred to was based was that the tax was upon the franchise of the corporation granted to it by the State. We do not think that this can be affirmed in the present case. It certainly could not have been intended as a tax on the corporate franchise, because by the terms of the act it was laid equally on the corporations of other States doing business in Pennsylvania. If intended as a tax on the franchise of doing business, which in this case is the business of transportation in carrying on interstate or foreign commerce, it would clearly be unconstitutional. . . . Interstate commerce, when carried on by corporations, is entitled to the same protection against state exactions which is given to such commerce when carried on by individuals."

In accord with the distinctions here laid down, this court, in the case of *Maine* v. *Grand Trunk Railway*, 142 U. S. 217, sustained a statute of the State of Maine as being a valid tax upon the corporate franchise — the law imposing a tax on the franchise according to the amount of the gross receipts in the State, such amount to be ascertained by dividing the total gross receipts by the total number of miles operated, and multiplying that amount by the number of miles operated in the State.

Tested by these decisions, is the state tax here in question void? It is not a tax on a non-resident merchant, through the resident broker. It is not a tax on the goods, or on the proceeds of the goods sold. It is an occupation or privilege tax, exacted of a resident citizen pursuing the vocation of a general merchandise broker, graduated in amount by the value of the business transacted; or it may be considered in the light simply of an income tax on the resident citizen. The plaintiff is not specially the representative or accredited agent of any one non-resident merchant or manufacturer. He has a regular office, holds himself out as a general broker, and, in his line of business, is ready to serve all comers.

Mr. Chief Justice Fuller, after stating the case, delivered the opinion of the court.

In *Robbins* v. *Shelby County Taxing District*, 120 U. S. 489,

it was held that section 16 of c. 96 of the laws of Tennessee of 1881, enacting that: "All drummers and all persons not having a regular licensed house of business in the Taxing District of 'Shelby County' offering for sale, or selling goods, wares, or merchandise therein by sample, shall be required to pay to the county trustee the sum of $10 per week, or $25 per month for such privilege," so far as it applied to persons soliciting the sale of goods on behalf of individuals or firms doing business in another State, was a regulation of commerce among the States and violated the provision of the Constitution of the United States which grants to Congress the power to make such regulations. The question involved was stated by Mr. Justice Bradley, who delivered the opinion of the court, to be: "Whether it is competent for a State to levy a tax or impose any other restriction upon the citizens or inhabitants of other States, for selling or seeking to sell their goods in said State before they are introduced therein," (p. 494;) and it was decided that it was not. At the same time it was conceded that commerce among the States might be legitimately incidentally affected by state laws, when they, among other things, provided for "the imposition of taxes upon persons residing within the State or belonging to its population, and upon avocations and employments pursued therein, not directly connected with foreign or interstate commerce, or with some other employment or business exercised under authority of the Constitution and laws of the United States." And it was further stated: "To say that the tax, if invalid as against drummers from other States, operates as a discrimination against the drummers of Tennessee, against whom it is conceded to be valid, is no argument, because the State is not bound to tax its own drummers; and if it does so whilst having no power to tax those of other States, it acts of its own free will, and is itself the author of such discrimination. As before said, the State may tax its own internal commerce; but that does not give it any right to tax interstate commerce," (p. 499).

In the case at bar the complainants were established and did business in the Taxing District as general merchandise brokers, and were taxed as such under section nine of chapter ninety-

six of the Tennessee laws of 1881, which embraced a different subject matter from section sixteen of that chapter. For the year 1887 they paid the $50 tax charged, gave bond to report their gross commissions at the end of the year, and thereupon received, and throughout the entire year held, a general and unrestricted license to do business as such brokers. They were thereby authorized to do any and all kinds of commission business and became liable to pay the privilege tax in question, which was fixed in part and in part graduated according to the amount of capital invested in the business, or if no capital were invested, by the amount of commissions received. Although their principals happened during 1887, as to the one party, to be wholly non-resident, and as to the other, largely such, this fact might have been otherwise then and afterwards, as their business was not confined to transactions for non-residents.

In the case of Robbins the tax was held, in effect, not to be a tax on Robbins, but on his principals; while here the tax was clearly levied upon complainants in respect of the general commission business they conducted, and their property engaged therein, or their profits realized therefrom.

No doubt can be entertained of the right of a state legislature to tax trades, professions and occupations, in the absence of inhibition in the state constitution in that regard; and where a resident citizen engages in general business subject to a particular tax the fact that the business done chances to consist, for the time being, wholly or partially in negotiating sales between resident and non-resident merchants, of goods situated in another State, does not necessarily involve the taxation of interstate commerce, forbidden by the Constitution.

The language of the court in *Lyng* v. *State of Michigan*, 135 U. S. 161, 166, was: "We have repeatedly held that no State has the right to lay a tax on interstate commerce in any form, whether by way of duties laid on the transportation of the subjects of that commerce, or on the receipts derived from that transportation, or on the occupation or business of carrying it on, for the reason that such taxation is a burden on that commerce, and amounts to a regulation of it, which belongs

solely to Congress." But here the tax was not laid on the occupation or business of carrying on interstate commerce, or exacted as a condition of doing any particular commission business; and complainants voluntarily subjected themselves thereto in order to do a general business.

·In *McCall* v. *California*, 136 U. S. 104, it was held that: "An agency of a line of railroad between Chicago and New·York, established in San Francisco for the purpose of inducing passengers going from San Francisco to New York to take that line at Chicago, but not engaged in selling tickets for the route, or receiving or paying out money on account of it, is an agency engaged in interstate commerce; and a license tax imposed upon the agent for the privilege of doing business in San Francisco is a tax upon interstate commerce, and is unconstitutional." This was because the business of the agency was carried on with the purpose to assist in increasing the amount of passenger traffic over the road, and was therefore a part of the commerce of the road, and hence of interstate commerce.

In *Philadelphia and Southern Steamship Co.* v. *Pennsylvania*, 122 U. S. 326, 345, Mr. Justice Bradley, speaking for the court, said: "The corporate franchises, the property, the business, the income of corporations created by a State may undoubtedly be taxed by the State; but in imposing such taxes care should be taken not to interfere with or hamper, directly or by indirection, interstate or foreign commerce, or any other matter exclusively within the jurisdiction of the Federal government." And this of course is equally true of the property, the business and the income of individual citizens of a State. It is well settled that a State has power to tax all property having a *situs* within its limits, whether employed in interstate commerce or not. It is not taxed because it is so employed, but because it is within the territory and jurisdiction of the State. *Pullman's Palace Car Co.* v. *Pennsylvania*, 141 U. S. 18; *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196.

And it has often been laid down that the property of corporations holding their franchises from the government of the United States is not exempt from taxation by the States of its *situs*. *Railroad Company* v. *Peniston*, 18 Wall. 5; *Thomson*

v. *Pacific Railroad*, 9 Wall. 579 ; *Western Union Tel. Co.* v. *Massachusetts*, 125 U. S. 530.

So in *Wiggins Ferry Co.* v. *East St. Louis*, 107 U. S. 365, 374, where an annual license fee was imposed on the ferry company by the city of East St. Louis, the company having been chartered by the State of Illinois and being domiciled in East St. Louis, its boats plying between that place and St. Louis, Missouri, the court said : " The exaction of a license fee is an ordinary exercise of the police power by municipal cor-porations. When, therefore, a State expressly grants to an incorporated city, as in this case, the power ' to license, tax and regulate ferries,' the latter may impose a license tax on the keepers of ferries, although their boats ply between landings lying in two different States, and the act by which this exaction is authorized will not be held to be a regulation of commerce."

Again, in *Maine* v. *Grand Trunk Railway Co.*, 142 U. S. 217, we decided that a state statute which required every corporation, person or association operating a railroad within the State to pay an annual tax for the privilege of exercising its franchise therein, to be determined by the amount of its gross transportation receipts, and further provided that when applied to a railroad lying partly within and partly without a State, or to one operated as a part of a line or system extending beyond the State, the tax should be equal to the proportion of the gross receipts in the State, to be ascertained in the manner provided by the statute, did not conflict with the Constitution of the United States. It was held that the reference by the statute to the transportation receipts and to a certain percentage of the same, in determining the amount of the excise tax, was simply to ascertain the value of the business done by the corporation, and thus obtain a guide to a reasonable conclusion as to the amount of the excise tax which should be levied. In this respect the tax was unlike that levied in *Philadelphia Steamship Company* v. *Pennsylvania, supra*, where the specific gross receipts for transportation were taxed as such, taxed " not only because they are money, or its value, but because they were received for transportation."

Since a railroad company engaged in interstate commerce is liable to pay an excise tax according to the value of the business done in the State, ascertained as above stated, it is difficult to see why a citizen doing a general business at the place of his domicil should escape payment of his share of the burdens of municipal government because the amount of his tax is arrived at by reference to his profits. This tax is not on the goods, or on the proceeds of the goods, nor is it a tax on non-resident merchants; and if it can be said to affect interstate commerce in any way it is incidentally, and so remotely as not to amount to a regulation of such commerce.

We presume it would not be doubted that, if the complainants had been taxed on capital invested in the business, such taxation would not have been obnoxious to constitutional objection; but because they had no capital invested, the tax was ascertained by reference to the amount of their commissions, which when received were no less their property than their capital would have been. We agree with the Supreme Court of the State that the complainants having taken out licenses under the law in question to do a general commission business, and having given bond to report their commissions during the year, and to pay the required percentage thereon, could not, when they applied for similar licenses for the ensuing year, resort to the courts because the municipal authorities refused to issue such licenses without the payment of the stipulated tax. What position they would have occupied if they had not undertaken to do a general commission business, and had taken out no licenses therefor, but had simply transacted business for non-resident principals, is an entirely different question, which does not arise upon this record.

The judgment of the Supreme Court is

*Affirmed.*

MR. JUSTICE HARLAN dissenting.

It seems to me that the opinion and judgment in this case are not in harmony with numerous decisions of this court. I do not assume that the court intends to modify or overrule any of those cases, because no such purpose is expressed. And

yet I feel sure that the present decision will be cited as having that effect.

In *Robbins* v. *Shelby County Taxing District*, 120 U. S. 489, 496, 497, it was held that Tennessee could not require, even from its own people, a drummer's license for soliciting the sale of goods there on behalf of individuals or firms doing business in another State. This rule, the court said, "will only prevent the levy of a tax, or the requirement of a license, for making negotiations for the conduct of interstate commerce, and it may well be asked where the State gets authority for imposing burdens on that branch of business any more than for imposing a tax on the business of importing from foreign countries, or even on that of postmaster or United States marshal. The mere calling the business of a drummer a privilege cannot make it so. Can the state legislature make it a Tennessee privilege to carry on the business of importing goods from foreign countries? If not, has it any better right to make it a state privilege to carry on interstate commerce? It seems to be forgotten, in argument, that the people of this country are citizens of the United States, as well as of the individual States, and that they have some rights under the Constitution and laws of the former independent of the latter, and free from any interference or restraint from them." Again: "It is strongly urged, as if it were a material point in the case, that no discrimination is made between domestic and foreign drummers — those of Tennessee and those of other States; that all are taxed alike. But that does not meet the difficulty. Interstate commerce cannot be taxed at all, even though the same amount of tax should be laid on domestic commerce, or that which is carried on solely within the State. This was decided in the case of *The State Freight Tax*, 15 Wall. 232. The negotiation of sales of goods which are in another State, for the purpose of introducing them into the State in which the negotiation is made, is interstate commerce. A New Orleans merchant cannot be taxed there for ordering goods from London or New York, because, in the one case, it is an act of foreign, and, in the other, of interstate, commerce, both of which are subject to regulation by Congress alone."

In *Philadelphia & Southern Steamship Co.* v. *Pennsylvania*, 122 U. S. 326, a tax, imposed in Pennsylvania, upon the gross receipts of a steamship company, incorporated under the laws of that State, such gross receipts being derived from the transportation of persons and property by sea, between different States, and to and from foreign countries, was held to be a regulation of interstate and foreign commerce, and, therefore, unconstitutional.

In *Leloup* v. *Port of Mobile*, 127 U. S. 640, 648, an ordinance of that port requiring a license tax from telegraph companies was held to be invalid in its application to a company having a place of business in Mobile, and being engaged there in the occupation of transmitting messages from and to points in Alabama to and from points in other States. This court, overruling *Osborne* v. *Mobile*, 16 Wall. 479, said that "no State has the right to lay a tax on interstate commerce in any form, whether by way of duties laid on the transportation of the subjects of that commerce, or on the receipts derived from that transportation, or on the occupation or business of carrying it on, and the reason is that such taxation is a burden on that commerce, and amounts to a regulation of it, which belongs solely to Congress."

In *Asher* v. *Texas*, 128 U. S. 129, a state law exacting a license tax to enable a person, within the State, to solicit orders and make sales there for a person residing in another State, was held to be repugnant to the commerce clause of the Constitution.

In *Stoutenburgh* v. *Hennick*, 129 U. S. 141, 147, the question was whether an act passed, in 1871, by the legislative assembly of the District of Columbia, requiring commercial agents engaged in offering merchandise by sample to take out and pay for a license, was invalid when applied to persons soliciting in the District the sale of goods on behalf of individuals or firms doing business outside of the District. Referring to the particular clause of the act upon which it was attempted to sustain the case, this court said: "This provision was manifestly regarded as a regulation of a purely municipal character, as is perfectly obvious, upon the principle of *noscitur*

*a sociis,* if the clause be taken as it should be, in connection with the other clauses and parts of that act. But it is indistinguishable from that held void in *Robbins* v. *Shelby County Taxing District,* and *Asher* v. *Texas,* 128 U. S. 129, as being a regulation of interstate commerce, so far as applicable to persons soliciting, as Hennick was, the sale of goods on behalf of individuals or firms doing business outside of the District."

In *McCall* v. *California,* 136 U. S. 104, it was held that a license tax imposed by an ordinance enacted by the board of supervisors of the city and county of San Francisco upon an agent engaged at that city in the business of soliciting travel for a line of railroad between Chicago and New York was invalid under the commerce clause of the Constitution.

In *Norfolk &c. Railroad Co.* v. *Pennsylvania,* 136 U. S. 114, a tax imposed by Pennsylvania upon a railroad company incorporated in another State, and whose line extended from Philadelphia into other States, for the privilege of keeping an office in Pennsylvania, to be used by its officers, stockholders, agents and employés, was a tax upon commerce among the States, and therefore void.

In *Crutcher* v. *Kentucky,* 141 U. S. 47, the court adjudged to be void an act of the legislature of Kentucky, so far as it forbade foreign express companies from carrying on business between points in that State and points in other States, without first obtaining a license from the State.

The principles announced in these cases, if fairly applied to the present case, ought, in my judgment, to have led to a conclusion different from that reached by the court. Ficklen took out a license as merchandise broker and gave bond to make a return of the gross commissions earned by him. His commissions in 1887 were wholly derived from interstate business, that is, from mere orders taken in Tennessee for goods in other States, to be shipped into that State when the orders were forwarded and filled. He was denied a license for 1888 unless he first paid two and a half per cent on his gross commissions. And the court holds that it was consistent with the Constitution of the United States for the local authorities of the Taxing District of Shelby County to make it a condition

precedent of Ficklen's right to a license for 1888 that he should pay the required per cent of the gross commissions earned by him in 1887 in interstate business. This is a very clever device to enable the Taxing District of Shelby County to sustain its government by taxation upon interstate commerce. If the ordinance in question had, in express terms, made the granting of a license as merchandise broker depend upon the payment by the applicant of a given per cent upon his earnings in the previous year in interstate business, the court, I apprehend, would not have hesitated to pronounce it unconstitutional. But it seems that if the local authorities are discreet enough not to indicate in the ordinances under which they act their purpose to tax interstate business, they may successfully evade a constitutional provision designed to relieve commerce among the States from direct local burdens. The bond which Ficklen gave should not, in my opinion, be construed as embracing his commissions earned in business, upon which no tax can be constitutionally imposed by a State.

The result of the present decision is that while, under *Robbins* v. *Shelby County Taxing District*, a license tax may not be imposed in Tennessee upon drummers for soliciting there the sale of goods to be brought from other States; while, under *Leloup* v. *Mobile*, a local license tax cannot be imposed in respect to telegrams between points in different States; and while, under *Stoutenburgh* v. *Hennick*, commercial agents cannot be taxed in the District of Columbia for soliciting there the sale of goods to be brought into the District from one of the States, — the Taxing District of Shelby County may require, as a condition of granting a license as merchandise broker, that the applicant shall pay a license fee and, in addition, $2\frac{1}{2}$ per cent upon the gross commissions received, not only in the business transacted by him that is wholly domestic, but in that which is wholly interstate.

For these reasons I am constrained to dissent from the opinion and judgment of the court in this case.