## In re ROZELLE.

(Circuit Court, E. D. Arkansas, W. D. January 30, 1893.)

CONSTITUTIONAL LAW—INTERSTATE COMMERCE—MUNICIPAL LICENSE.

A municipal ordinance which imposes a license tax on every merchandise broker who maintains a warehouse or office within the city limits is void as to a broker whose sole business is making contracts by sample for the sale and delivery to citizens of the state of merchandise which, at the time of making the contract, is the property of citizens of other states, and is situated therein; for as to him it is a regulation of interstate commerce, and contravenes the provision of the federal constitution vesting power to regulate such commerce exclusively in congress. Ficklen v. Taxing Dist., 12 Sup. Ct. Rep. 810, 145 U. S. 1, distinguished.

At Law. Petition for a writ of habeas corpus. Prisoner discharged.

Coleman & Coleman, for petitioner.
Morris M. Cohn, for respondent.

WILLIAMS, District Judge. This is an application by petition of J. S. Rozelle to be discharged by this court upon a writ of

habeas corpus heretofore issued, stating that he is held in custody by one Sam Speight, a policeman of the city of Little Rock, and illegally restrained of his liberty. The response to the writ of habeas corpus by the said Speight states that he holds the petitioner by virtue of a warrant of arrest issued to him by the police court of the city of Little Rock, a municipal corporation of the state of Arkansas, because of the breach of an ordinance of said city by said petitioner, which ordinance ordains, among other things, as follows:

"Be it ordained by the city council of the city of Little Rock:

"Section 1. That it shall be unlawful for any person to engage in, exercise, or pursue any of the following vocations or business without having first obtained a license therefor from the proper city authorities, the amount of which license is hereby fixed as follows, to wit: (1) Every merchandise broker who maintains a storeroom or wareroom or office within the city limits, $50 per annum."

"Sec. 4. That whoever shall engage in any business for which a license is required in this ordinance without first obtaining and paying for the same as above required, and where not specifically amended herein, as required by the terms of Ordinance No. 391, passed December 29, 1891, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined in any sum not exceeding $25."

It is conceded that the petitioner is a merchandise broker, who makes contracts in this state by sample for the sale and delivery to citizens of this state of goods, wares, and merchandise which, at the time of entering into said contract, are the property of citizens of other states, and situated in such other states; and that it is no part of his business to make sales of such goods, wares, and merchandise situated in this state at the time of making any such contracts. And it is contended by said petitioner that he is not amenable to the provisions of said ordinance, and that the same is, as to him and his vocation, void, because it is in conflict with the provisions of the constitution of the United States regulating commerce between the states, and that for that reason this court has jurisdiction to inquire into his case, and afford him relief if he is entitled to the same; and the respondent admits the jurisdiction of this court to hear and determine this case.

The case of Robbins v. Taxing Dist., 120 U. S. 489, 7 Sup. Ct. Rep. 592, is a case very similar to the one under consideration. The learned justice, in delivering his opinion in this case, uses the following language:

"In a word, it may be said that in the matter of interstate commerce the United States are but one country, and are and must be subject to one system of regulations, and not to a multitude of systems. The doctrine of freedom of that commerce, except as regulated by congress, is so firmly established that it is unnecessary to enlarge further upon the subject. In view of these fundamental principles, which are to govern our decision, we may approach the question submitted to us in the present case, and inquire whether it is competent for a state to levy a tax or impose any other restriction upon the citizens or inhabitants of other states for selling or seeking to sell their goods in such state before they are introduced therein. Do not such restrictions affect the very foundation of interstate trade? How is a manufacturer or a merchant of one state to sell his goods in another state without in some way obtaining orders therefor? Must he be compelled to

send them at a venture, without knowing whether there is any demand for them? This may, undoubtedly, be safely done with regard to some products for which there is always a market and a demand, or where the course of trade has established a general and unlimited demand. A raiser of farm produce in New Jersey or Connecticut, or a manufacturer of leather or wooden ware, may, perhaps, safely take his goods to the city of New York, and be sure of finding a stable and reliable market for them. But there are hundreds. perhaps thousands, of articles which no person would think of exporting to another state without first procuring an order for them. It is true, a merchant or manufacturer in one state may erect or hire a warehouse or store in another state, in which to place his goods, and await the chances of being able to sell them; but this would require a warehouse or a store in every state with which he might desire to trade. Surely he cannot be compelled to take this inconvenient and expensive course. In certain branches of business it may be adopted with advantage. Many manufacturers do open houses or places of business in other states than those in which they reside, and send their goods there to be kept on sale; but this is a matter of convenience, and not of compulsion, and would neither suit the convenience nor be within the ability of many others engaged in the same kind of business, and would be entirely unsuited to many branches of business. In these cases, then, what shall the merchant or manufacturer do, who wishes to sell his goods in other states? Must he sit still in his factory or warehouse and wait for the people of those states to come to him? This would be a senseless and ruinous proceeding. The only other way, and the one, perhaps, which most extensively prevails, is to obtain orders from persons residing or doing business in those other states. But how is the merchant or manufacturer to secure such orders? If he may be taxed by such states for doing so, who shall limit the tax? It may amount to prohibition. To say that such a tax is not a burden upon interstate commerce is to speak at least unadvisedly, and without due attention to the truth of things. It may be suggested that the merchant or manufacturer has the post office at his command, and may solicit orders through the mails. We do not suppose, however, that any one would seriously contend that this is the only way in which his business can be transacted without being amenable to exactions on the part of the state. Besides, why could not the state to which his letters might be sent tax him for soliciting orders in this way as well as in any other way? The truth is that, in numberless instances, the most feasible, if not the only practicable, way for the merchant or manufacturer to obtain orders in other states is to obtain them by personal application, either by himself or by some one employed by him for that purpose; and in many branches of business he must necessarily exhibit samples for the purpose of determining the kind and quality of the goods he proposes to sell, or which the other party desires to purchase. But the right of taxation, if it exists at all, is not confined to selling by sample. It embraces every act of sale, whether by word of mouth only or by the exhibition of samples. If the right exists, any New York or Chicago merchant visiting New Orleans or Jacksonville for pleasure or for his health, and casually taking an order for goods to be sent from his warehouse, could be made liable to pay a tax for so doing, or be convicted of a misdemeanor for not having taken out a license. The right to tax would apply equally as well to the principal as to his agent, and to a single act of sale as to a hundred acts. But it will be said that a denial of this power of taxation will interfere with the right of the state to tax business pursuits and callings carried on within its limits, and its right to require licenses for carrying on those which are declared to be privileges. This may be true to a certain extent, but only in those cases in which the states themselves, as well as individual citizens, are subject to the restraints of the higher law of the constitution; and this interference will be very limited in its operation. It will only prevent the levy of a tax, or the requirement of a license, for making negotiations in the conduct of interstate commerce; and it may well be asked where the state gets authority for imposing burdens on that branch of business any more than for imposing a tax on the business of importing from foreign countries, or even on that of postmaster or United States mar-

shal. The mere calling the business of a drummer a privilege cannot make it so. Can the state legislature make it a Tennessee privilege to carry on the business of importing goods from foreign countries? If not, has it any better right to make it a state privilege to carry on interstate commerce? It seems to be forgotten in argument that the people of this country are citizens of the United States as well as of the individual states, and that they have some rights under the constitution and laws of the former independent of the latter, and free from any interference or restraint from them."

Analogous to this case is the case of Leloup v. Port of Mobile, 127 U. S. 640, 8 Sup. Ct. Rep. 1380, in which the court uses the following language:

"The question is squarely presented to us, therefore, whether a state, as a condition of doing business within its jurisdiction, may exact a license tax from a telegraph company, a large part of whose business is the transmission of messages from one state to another and between the United States and foreign countries, and which is invested with the powers and privileges conferred by the act of congress passed July 24, 1866, and such other acts incorporated in title 65 of the Revised Statutes. Can a state prohibit such a company from doing such a business within its jurisdiction, unless it will pay a tax and procure a license for the privilege? If it can, it can exclude such companies, and prohibit the transaction of such business altogether. We are not prepared to say that this can be done. * * * In our opinion, such a construction of the constitution leads to the conclusion that no state has the right to lay a tax on interstate commerce in any form whatever by way of duties laid on the transportation of the subject of that commerce, or on the receipts derived from that transportation, or on the occupation or business of carrying it on; and the reason is that such taxation is a burden on that commerce, and amounts to a regulation of it, which belongs solely to congress."

It would seem unnecessary to quote further decisions or authorities upon this question. The only case that would seem to be at all in conflict with these decisions is the case of Ficklen v. Taxing Dist., 145 U. S. 1, 12 Sup. Ct. Rep. 810, but this was a case where the petitioners or complainants had taken out license under the state law to do a general commission business, and had given bond to report their commissions during the year, and to pay a required percentage thereon, and applied to the municipal authorities to issue such license again without the payment of the stipulated tax; so that case is so dissimilar from the one under consideration that it is not authoritative upon the point in issue, for Chief Justice Fuller, in the opinion in that case, uses the following language:

"What position the petitioners would have occupied if they had not undertaken to do a general commission business, and had taken out no license therefor, but had simply transacted business for nonresident principals, is an entirely different question, which does not arise upon this record."

From all the authorities on this question I am clearly of the opinion that the ordinance in question, so far as the same refers to the petitioner or his occupation, is unconstitutional, and is in conflict with the provisions of the constitution regulating interstate commerce, and that, therefore, the petitioner should be discharged. It is accordingly so ordered.