UNITED STATES v. NAYLON.

(First Division.   Skagway.   July, 1906.)

No. 196B.

1. HIGHWAYS (§ 151*)—TAXES—WORK ON ROAD BY TAXPAYER—INDICTMENT.

    Defendant was a civilian employé at Ft. William H. Seward, Alaska, and resided within the military reservation, where he was employed in connection with the Third Infantry, U. S. A.

———————————————————————————

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

He was warned out by the road overseer of the Haines road precinct to work on the public roads outside the reservation, and, refusing to appear and work, or to commute the same by the payment of the tax prescribed in lieu of labor, was indicted therefor. On demurrer to the indictment, *held* that a civilian employé residing within the military reservation and connected with the army was exempt from road tax outside the reservation, and the demurrer to the indictment sustained.

[Ed. Note.—For other cases, see Highways, Dec. Dig. § 151.*]

On demurrer to indictment. John Naylon, the defendant in this case, stands indicted, under the Alaska road law. 33 Stat. 391. Naylon is a civilian employé of the army at Ft. William H. Seward, the United States military post near Haines Mission. His employment is in connection with the Third Infantry, U. S. A., and he lives within the bounds of the post or military reservation. In the summer of 1905, the road overseer for the Haines road precinct warned out Naylon and several civilian employés living on the reservation to work upon the road and trails in that precinct. This defendant and his fellow employés failed, refused, and neglected to obey the warning of the overseer. In other words, neither he nor they worked upon the roads, supplied a substitute, or commuted the labor by the payment of the tax prescribed in lieu of labor. He was indicted for this, under the road law. To this indictment defendant demurs, on the ground that he is a civilian employé of the army, residing upon the military reservation, and he contends that he is not, therefore, liable for the road tax provided therein.

J. J. Boyce, U. S. Dist. Atty.

W. P. Jackson, Capt. 3d Infantry, U. S. A., for defendant.

GUNNISON, District Judge. The statute provides:

"Road overseers of the different precincts are authorized, and it is made their duty to warn out all male persons between eighteen

---

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

and fifty years of age who have resided thirty days in the district of Alaska, who are capable of performing labor on roads or trails, and who are not a precinct charge, to perform two days work of eight hours each, in locating, constructing or repairing public roads or trails, under the direction of the road overseer within whose precinct they may respectively reside, or furnish a substitute to do the same, or pay the sum of four dollars per day for two days labor." Act April 27, 1904, c. 1629, 33 Stat. 392.

The only persons exempted from the tax are (1) those who have not resided 30 days in the district of Alaska; (2) those under 18 years of age; (3) those over 50 years of age; (4) those incapable of performing labor; (5) those who are precinct charges; and (6) those who do not reside within the precinct. The rule of law is that the intention to exempt persons or property from taxation must be clear, and the presumption is against exemptions for taxation. While public policy has been the foundation of that rule, it is also the foundation for the rule that the pay, allowances, and equipment of persons in the military service of the Uinted States are exempt from taxation. 20 Am. & Eng. Ency. of L. (2d Ed.) 662. · Inferentially, a private soldier in the military service of the United States, under this rule, which is well-settled in this country, would not be subject to the road tax, though it is a capitation tax. But is the status of the enlisted man and the civilian employé the same? In other words, may the civilian employé be deemed to be in the military service of the United States? The status of the enlisted man is peculiar to the military service, though his relation to the government is of a quasi contractual character. It is entirely different from that of the civilian employé. The former, when he enlists, surrenders himself to the control and discipline of the army. He ceases to be a free agent in many respects during the term of his enlistment, and he may not, at will, break his contract. In re Grimley, 137 U. S. 157, 11 Sup. Ct. 54, 34 L. Ed. 636; 20 Am. & Eng. Ency. of Law (2d Ed.) 662.

On the other hand, the contract of the civilian employé is the ordinary contract of employment between master and servant. His employment may be terminated before the expiration of the contract by himself or his employer, in all respects as though the government were an individual or private corporation. In these respects the status of the two differs. The employment of the civilian, however, is in connection with the regiment, and not with the military post. He must, under his contract, accompany the regiment, or such portion of it as the commanding officer shall designate. He is not a fixture at the post. His residence is determined by the movement of the regiment. But he may not, I think, be considered as being in the military service of the United States. How, then, can he escape the payment of the tax?

An examination of the conditions relative to taxation in Alaska will be useful in determining the liability of the defendant. The conflict arising between state and federal governments as to the scope of the power to levy taxes is not to be found in Alaska. The same lawmaking body that enacts local tax laws for Alaska is the source of the federal law. The sovereign power is vested in one and the same government. The federal government is supreme, and its authority is undivided within the district of Alaska. Two of the functions of government given by the Constitution to Congress are (a) "to lay and collect taxes," and (b) "to provide for the common defense," and "raise and support armies." Const. art. 1, § 8. Taxation is an essential incident to government.

"The foundation of the obligation to pay taxes is not the privileges enjoyed or the protection given to the citizen by government. * * * The necessity of money for the support of the state in times of peace or war fixes upon the citizen the obligation to pay the tax imposed by lawful authority." Dobbins v. Erie County, 16 Pet. 443, 10 L. Ed. 1022.

Congress, in the exercise of the power granted by article 1, § 8, of the Constitution, has provided for Alaska a series of taxes, some laid upon property, some upon business and occupations, and the tax now under consideration, which is a capitation tax. It is not for the purpose of raising funds for the support of the government, but to provide means of communication between the various parts of the inhabited territory, so that the functions of government may the better be exercised, and the citizens may with greater facility and with less expense move about the country.

We have seen what are the specific exemptions, and that the rule of construction is adverse to exemptions as being against public policy. It is, however, to be remembered that this defendant is employed by the government under authority from Congress, given by virtue of the constitutional provisions cited; for Congress has deemed civilian employés necessary for the efficiency of the army, and has provided for them.

Congress, having provided the army with this employé, because it deemed such employé necessary to the care and protection of the government property and the exercise of the functions of the government, would stand in a most inconsistent attitude if it can be said now that its intention is that the employé must, despite the necessity of his regular employment, lay that aside and work out the tax which it has provided. The result would be in reality the payment of the tax by the government itself. It would be the taxing of an instrumentality of the government. Such a construction would not only be ridiculous and futile, but might be accompanied by disastrous results in other portions of the territory, where the duties of the civilian employés are more consequential and labor less plenty than here. The sound test to be applied to these cases is found in Railroad Company v. Peniston, 18 Wall. 36, 21 L. Ed. 787, where the court says:

"The exemption of federal agencies from state taxation depends solely upon the effect of the tax, whether it deprives them of the power to serve the government as intended."

See, also, 12 Am. & Eng. Ency. of Law (2d Ed.) 271, 367, et seq.; Ficklen v. Shelby County, 145 U. S. 22, 12 Sup. Ct. 810, 36 L. Ed. 601.

This test, when applied to the case at bar, seems to be decisive. The defendant is an agency of the government, though admittedly a humble one, and to require him to work out the road tax would be to deprive him of the power to serve the government as intended. It is the opinion of the court that to construe the law otherwise would be, not only against the settled rules of law, but against public policy as well.

There is another phase of the situation that, to the mind of the court, is equally decisive of the question. The defendant and the other civilian employés reside within the boundaries of the post. The land within the present boundaries of the post was by the President of the United States, by executive orders dated, respectively, December 31, 1898, and November 21, 1902, "reserved and set apart for future military purposes and proclaimed a military reservation." Over the military reservations the United States has supreme and unqualified control, in the absence of any statute directly or by necessary implication extending the powers of the local government. Opinion Judge Advocate General of the Army, No. 1,705. There is no act of Congress applying to the district of Alaska which extends the powers of the local government over the reservation, unless the road law itself be construed to have that effect. Municipalities or incorporated towns are expressly exempted from the provisions of the act. Why? Because within the boundaries thereof there exists a local government with machinery for the care of roads therein, and the necessity for or propriety of imposing

upon the inhabitants of the municipality a tax for the purpose of road making outside thereof did not exist. This is equally true of the military reservation. The civil government has no authority within the lines of the reservation, other than to serve process and make arrests for violations of the civil laws occurring without the reservation. Military Laws U. S. 1897, p. 430, note; Ft. Leavenworth R. R. v. Lowe, 114 U. S. 525, 539, 5 Sup. Ct. 995, 29 L. Ed. 264; s. c. 92 U. S. 734, 23 L. Ed. 634; s. c. (D. C.) 122 Fed. 521.

The road overseer's district does not run within the bounds of the reservation. The military authorities have entire control over the construction and maintenance there, as completely as have the municipal authorities over the streets within the incorporated towns. Hence, under the phrasing of the statute, if the reservation be not within the precinct of the road overseer, he has no power or authority over any who do not reside within the precinct. And one residing within the military reservation is as much out of the road district or precinct, though it touches the reservation lines on every side, as though he lived in another and far-distant road precinct. Residents within such ceded districts have none of the duties and obligations and none of the rights and privileges of citizens of the states within which such lands are situate. They are not subject to taxation. They cannot exercise the rights of suffrage. 6 Ops. Attys. Gen. 577; 10 Ops. Attys. Gen. 35; Sinks v. Reese, 19 Ohio St. 306, 2 Am. Rep. 397; Military Law 1897, p. 431, note.

There can be no doubt that a civilian employé of the army, who resides within the bounds of and upon a military reservation, falls within the sixth exemption as set forth above and hence is not subject to the road tax. It is, I think, equally beyond question that, owing to his peculiar status, a civilian employé of the army is not within the provisions of the statute.

The demurrer is sustained.