JOHN B. LOVINGSTON *et al.*

*v.*

THE BOARD OF TRUSTEES.

*Filed at Mt. Vernon June 21, 1881.*

1. SCHOOL TREASURER—*compensation.* The statute in express terms prohibits the allowance of any pay to a school treasurer for the performance of any duty imposed on him by law, over and above the compensation fixed by the board of trustees before his appointment.

2. Where a treasurer of a school township procured from an incorporated city its bonds for an indebtedness due from it to the school fund, which he

negotiated, and realized the money, it was *held*, that he was entitled to no extra compensation for such services, and that if he was, an allowance of fifteen per cent, making a sum of $1500, was exorbitant in the extreme.

3. SAME—*his duty.* It is the duty of a school township treasurer to demand, receive and safely keep, according to law, all moneys, books and papers of every description belonging to his township, and where a city is liable to the school fund for moneys received for license fees, it is his duty to receive the same, and he has no authority to receive city warrants in lieu of money, or to procure the issue of city bonds for the same, and sell the same at a discount. If he receives city orders on its treasurer, it is his duty to demand the money, and if necessary to sue and recover judgment for the amount, and take steps for its collection.

4. SCHOOL TRUSTEES—*when personally liable.* To make the trustees of schools liable, under sec. 64 of the School law, for the wrongful act or neglect of duty by their treasurer, such act or neglect must be required by an order of the board entered upon their journal, and signed by the president and clerk. The section being highly penal, to render the trustees liable the provisions of the statute must be strictly fulfilled.

5. SCHOOL FUND—*treasurer liable for moneys collected, even though not legally belonging to the fund.* Even if the school fund of a township is not entitled to receive from an incorporated city a portion of its revenues derived from the license of dram-shops, yet if its treasurer collects and receives the same he will be liable to the board of trustees for the same. To enable the trustees to refund it, they must have the money to enable them to do so, if the collection is illegal.

6. LICENSE FEE—*not a tax.* A fee received for a license granted by a municipal corporation for the sale of liquors, is not a tax, in the meaning of the constitutional provision requiring equality and uniformity. In this respect there is no substantial difference between the constitutions of 1848 and 1870.

APPEAL from the Appellate Court for the Fourth District; —heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

This was a suit brought in the circuit court by the trustees of schools, on the official bond of John B. Lovingston, as township treasurer for town 2 north, range 10 west, in St. Clair county.

Section 12 of article 7, of the charter of the city of East St. Louis, directs that one-half of the moneys arising from

dram-shop licenses collected by the city officers be paid to the township treasurer of the township mentioned, for school purposes. During the time Lovingston held the office of township treasurer, he received, as such treasurer, from time to time, from the city clerk of East St. Louis, city scrip or city warrants, to the amount of about $10,000, as the portion of the money derived from dram-shop licenses, belonging to the school fund. These city warrants, for the want of money in the city treasury to pay them, were worth in the market only about 70 cents on the dollar. Lovingston was directed by the board of trustees of his township to sell the warrants to the best advantage, for the benefit of the school fund. Accordingly he entered upon negotiations with the city authorities, and induced them to issue bonds of the city in lieu of the warrants, payable on long time, and at ten per cent interest, and these bonds he sold to bankers and brokers in the city of St. Louis, at par, and in this way realized for the school fund, in cash, an amount equal to the face of the warrants. Subsequently, on the 15th of April, 1876, the board of school trustees, by an order duly adopted, and recorded in the proceedings of the board, and signed by the president and clerk thereof, allowed to Lovingston, as compensation for his services in disposing of the city scrip, the sum of $1481.25. Finally, in 1877, Lovingston was succeeded in the office of township treasurer by John Renshaw. In making settlement with his successor, Lovingston retained the sum of $1481.25, which had been allowed to him by the board, as before mentioned. It was to recover this sum that this suit was brought. A trial in the circuit court resulted in a judgment against Lovingston and his sureties on his official bond. On their appeal to the Appellate Court for the Fourth District, that judgment was affirmed. Hence this appeal. The principal question presented is whether Lovingston, while acting as township treasurer, could properly be allowed the special compensation for his services in negotiating the city warrants.

Mr. M. MILLARD, for the appellants:

The duties of school treasurer are limited and specifically defined by law. They can not be extended by implication, nor circumscribed by construction. His duties are pointed out in chap. 122, Rev. Stat. 1874, secs. 3, 32, 34, 35, 36, 42, 45, 53-57, and 60-64.

The services performed by him in this case were not expressly required, nor analogous to any imposed by the statute. He is not bound to turn broker in the discharge of his official duty. The services were essential, and resulted in obtaining a much larger sum for the scrip. The board thought he ought to be paid; they regarded the services as extra-official, and they were right, morally and legally.

Under section 64 of the School law, the treasurer and his sureties are responsible for every unlawful act, unless the board imposes its authority and requires such act, and then the liability is shifted to the board. *Board of Trustees* v. *Misenheimer*, 78 Ill. 22.

A license is not a tax requiring uniformity in its levy and collection. *People* v. *Thurber*, 13 Ill. 554; *East St. Louis* v. *Wehrung*, 46 id. 392.

As to what violates the rule of uniformity in taxation, see *Madison Co.* v. *People*, 58 Ill. 462; *Allhands* v. *People*, 82 id. 234; *Prim* v. *Belleville*, 59 id. 142; *Sleight* v. *People*, 74 id. 47.

Mr. CHARLES W. THOMAS, for the appellees:

Section 72 of the School law, which provides that township treasurers shall receive in full for their services a compensation, to be fixed prior to their election, by the board of trustees, precludes the treasurer from holding the money allowed him for what is claimed as extra services.

Mr. L. H. HITE, also for the appellees:

The constitution of 1870 gives the General Assembly the power to tax liquor dealers, and the imposition of this tax in

the shape of a dram-shop license is a direct levy of a State tax by the legislature, and in this case with a direction of the application of the proceeds. The city had no vested right in such dram-shop fund. *Gutzweller* v. *People*, 14 Ill. 142; *People ex rel.* v. *Power*, 25 id. 169.

A license for selling liquor is not a tax. *People* v. *Thurber*, 13 Ill. 554; *Walker* v. *City of Springfield*, 94 id. 304; *Illinois Mutual Insurance Co.* v. *City of Peoria*, 29 id. 180; *East St. Louis* v. *Wehrung*, 46 id. 392; *Ducat* v. *City of Chicago*, 48 id. 172.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Appellants claim that the services of Lovingston, rendered in procuring the bonds and their subsequent sale, were no part of his official duty, and are not covered by his salary, and the order of the school board making the extra allowance of $1481.25 was legal and binding. It is also insisted, that the license fee paid by dram-shop keepers is a tax, and must be uniform, and being a city tax, under the constitution it could only be appropriated for city purposes, and the constitution prohibits the application of one-half, or any other portion, to school purposes.

The 72d section of the School law provides, that "township treasurers shall receive, in full for their services, compensation to be fixed prior to their election by the board of trustees." This, in express terms, prohibits any extra pay for the performance of any duty imposed by the statute. Appellant Lovingston was fully paid for the performance of his official duties, and if his services in procuring the city bonds and selling them fell within such duties, then he can have no legal claim for further compensation.

The 62d section imposes upon the treasurer the duty of demanding, receiving and safely keeping, according to law, all moneys, books and papers of every description belonging to his township. This section, therefore, imposed the duty of demanding and receiving the money from the city treas-

urer arising from dram-shop licenses, and it being his duty to demand and receive the money, he had no authority to receive city warrants unless they were mere orders on the city treasurer for the money. It was his duty to demand the money, and, if necessary, to sue and recover judgment for the amount, and to have compelled the payment of the judgment by *mandamus.* This seems to have been his plain duty. Nor did he have the legal authority to receive the city bonds running for a long period of time, for money due and payable on demand. It is true that he was authorized by the board of trustees " to sell the warrants to the best advantage," and to do so he procured the issue of bonds, and sold them instead of the warrants, which he surrendered to the city. There was no order that he sell the warrants, but a mere request or permission to sell them to the best advantage. This was not under a requisition or order to sell the bonds. It was a mere permission, and does not, as is claimed, bring the case within the provisions of the 64th section of the act, which renders the trustees liable when the wrongful act or neglect of duty by the treasurer is required by the order of the board, entered upon their journal, and signed by the president and clerk.

The section is highly penal, and to render the trustees liable, the provisions of the statute must have been literally fulfilled. Such statutes are strictly construed, and there can be no liability incurred under this section until the act is required or ordered by the trustees, and the order signed as required. We have no power to enlarge the scope of the act beyond the cases enumerated. We can not bring cases within its operation that are not specified in the language of the act.

Lovingston had no more right to receive anything but money from the city than to surrender a note and mortgage for money loaned, when the debt was perfectly good, and take notes on other persons, and sell and convert them, and charge extra for his trouble. If he received anything but money, it was a violation of duty. We have seen that he had no power

to convert the city warrants, payable on demand, into bonds of the city on long time. When he did so he rendered himself and sureties liable for the amount, and it was for his own protection and that of his sureties to sell the bonds. Even if the trustees had the power to authorize him to sell the warrants, he failed to pursue the authority thus given; and having departed from the authority, he was not within the scope of his legal authority, and was liable for the amount when he received the bonds and surrendered the warrants. Shall he be paid nearly fifteen per cent on the amount for which he was liable, for doing that which he did to remove his liability,—that which he did to save himself and sureties from loss? Can it be claimed that had he violated some other duty, and expended labor and devoted time to relieve himself from loss, the board of trustees would be empowered to pay him for such labor and time? Most assuredly not. The amount, even if it was legal for the board to make compensation, seems to be exorbitant in the extreme. It was only a saving of one-half of the 30 per cent depreciation of the warrants,—nearly $1500 for perhaps a few hours' or a few days' time in procuring the city to issue bonds, which they should have been anxious to do, as their treasury was empty, and probably only required him to offer them to bankers or brokers to effect a sale, as they bear a high rate of interest, and the security was no doubt regarded as ample. In any view we have been able to take of the case, we are unable to see that he was entitled to any extra compensation, or, even if he was, the amount allowed seems to be out of all proportion to the services rendered. Even if the law sanctioned an allowance, it has the appearance of squandering, and a destruction of a fund that should be regarded as sacred. That he should have been allowed, for this single transaction, approximately, 150 per cent more than his entire year's salary, seems to be a reckless attempt at mere wanton waste of the fund. Such allowances must soon waste the entire fund, if they become the rule.

But it is next urged, that these license fees are a tax, and they are illegal because they are not uniform. We have been unable to find anything from which it may be inferred that the fees received for dram-shop licenses by the city were not uniform in amount, and the period for which they were to run. This would seem to be a complete answer to that position.

In the cases of *The People* v. *Thurber*, 13 Ill. 554, and *East St. Louis* v. *Wehrung*, 46 id. 392, it was held, that a fee received for a license granted by a municipal corporation, authorizing the sale of liquor, was not a tax, in a constitutional sense, and not being a tax in that sense, it did not violate the constitutional requirement of equality in the levy of taxes. But it is said those decisions were made under the constitution of 1848, and the fundamental law of 1870 was in force when these license fees were received, and its provisions must govern. The clauses of the constitutions of 1848 and 1870, which provide that municipalities may be vested with power to levy and collect taxes for corporate purposes, are the same in meaning, although not precisely the same in language. There is no difference. Both provide that such bodies may be vested with power to impose taxes for corporate purposes, and that such taxes shall be uniform in respect to persons and property within the jurisdiction of the body imposing the same. In meaning, the two clauses are precisely the same, nor has counsel for appellants attempted to distinguish them, or to point out any difference. The constitution of 1870 contains some provisions not found in that of 1848, but they in nowise affect, limit or qualify the provisions to which we have referred.

The present constitution having made no change, and its framers being aware of the construction given to the clause, in *The People* v. *Thurber* and *East St. Louis* v. *Wehrung*, *supra*, we must conclude that body intended that construction to stand. We are fortified in this conclusion, as there was a change made in reference to making special improve-

ments by special taxation on contiguous property, to obviate the effects of decisions of this court on that subject. Independent of these considerations, we are satisfied that the language of the clause does not admit of a construction different from that given in those cases.

There is another class of cases, and they refer to a per cent of the income or receipts by the agents of foreign insurance companies, imposed for the privilege of carrying on their business in this State. This percentage is held not to be a tax, within a constitutional sense. *Illinois Mutual Fire Ins. Co.* v. *City of Peoria*, 29 Ill. 180; *Ducat* v. *City of Chicago*, 48 id. 172; *Walker* v. *Springfield*, 94 id. 364. It is held to be a license for the privilege of transacting the particular business.

It is also claimed that the law misappropriates this fund, and the board of trustees have no constitutional right to the fund, and hence the trustees have no right to recover, even if Lovingston is not entitled to it. We have seen the trustees are entitled to it, but if they were not, he received it for them, and as their officer, and placed it in the treasury as a part of the fund, and if sued, the trustees could not be heard to say that they never had the money, but the city must look to Lovingston for a recovery. Conceding the school fund is not entitled to it, still the corporation would be liable to refund it, and to do so they should have the money to meet the liability. He has no right to hold the money, even if it does not belong to the trustees. He got it under the claim that it belonged to the school fund, and so charged himself with it in his account as treasurer.

This dram-shop license not being a tax, within the meaning of the constitution, the decisions of this court which hold that a corporate tax can not be perverted from corporate use and purposes, have no application. We therefore refrain from any discussion of that question.

Perceiving no error in the record, the judgment of the court below is affirmed.

*Judgment affirmed.*

Mr. JUSTICE DICKEY, dissenting:

The appellant John B. Lovingston was, in 1875, appointed township treasurer for town 2 north, range 10 west, in St. Clair county, and in March, 1876, was re-appointed to the same office, and held the office until April 23, 1877. During his first term, and prior to March, 1876, he received, as such treasurer, from the city clerk for the city of East St. Louis, from time to time, city scrip or city warrants to the amount of about $10,000. These warrants were drawn and delivered to him by the city clerk in payment of one-half of the funds arising from dram-shop licenses collected by the city officers. These warrants were paid to him by reason of section 12, article 7, of the charter of East St. Louis, which directs one-half of the moneys arising from that source to be paid to the township treasurer of this township, for school purposes. These city warrants, for want of money in the city treasury to pay them, were at a discount of about 30 per cent, being worth in the market about 70 cents on the dollar. During his first term as treasurer, Lovingston was directed by the board of trustees of his township to sell these city warrants to the best advantage, for the benefit of the school fund. He entered upon negotiations for that purpose, and succeeded in converting them into money, at par. This was accomplished by inducing the city officers to issue bonds in lieu of the scrip, payable on long time, and at ten per cent interest per annum, and these bonds he sold to bankers and brokers in the city of St. Louis at par, and thus realized for the school fund, in cash, an amount equal to the face of the scrip. The bonds were sold some time in the month of March, 1876. About the beginning of his second term, March 4, 1876, he executed a treasurer's bond, with Albert Meintz, John M. Sullivan and A. X. Illinski as sureties, conditioned that Lovingston should faithfully discharge all the duties of said office of township treasurer according to law, and should "deliver to his successor in office all moneys, books, papers, securities and property in his hands as township treasurer,"

and entered upon the duties of his office for the second term as such.

After the money was realized by the sale of the city bonds, as above stated, and on the 15th of April, 1876, the board of trustees of schools for that township made an order that Lovingston should be paid, in compensation of his services in the disposal at par of this city scrip, the sum of $1481.25. This order was duly adopted, and recorded in the proceed-ings of the board, and signed by the president and clerk thereof. This sum was accepted by Lovingston in compen-sation for the services, and on June 3, 1876, he entered a credit to himself, in his account as school treasurer, for that amount. In the spring of 1877, John Renshaw was appointed township treasurer for that township, instead of Lovingston, and qualified as such, and became Lovingston's successor on the 23d of April, 1877. Soon after this, Lovingston settled with his successor, and turned over to him all books and property belonging to his office, and paid over and accounted satisfactorily for all moneys of the township ever received by him, except this sum of $1481.25.

It is insisted by appellees, that (inasmuch as the statute requires the salary of the township treasurer to be fixed be-fore he shall enter upon the duties of his office, and that he shall receive no other compensation as such for his services, and inasmuch as Lovingston was receiving, under that provision of the statute, during both of his terms, a salary at the rate of $1000 a year,) the allowance made to him as compensation for the services rendered in converting this scrip into money for the benefit of the school fund was an unlawful and an unwarranted act, and of no legal effect, and hence that it was the duty of Lovingston, at the close of his term, to have paid over that sum to his successor.

The first question which presents itself in this case is, were the services performed by Lovingston in disposing of this scrip a part of the duties of his office? I think they were not.

By section 32 of chapter 122, Revised Statutes, 1874, the township treasurer is an officer to be appointed by the board of trustees, and his term of office is for one year, unless removed for cause by the board.  His duties are defined in divers sections of that statute.

By section 62 it is declared, that the township treasurer shall demand, receive and safely keep, according to law, all moneys, books and papers of every description belonging to his township.  The form of the bond which he is required to give by section 55 of the same act, indicates, too, that he was to be the custodian of the moneys of the township.

By section 39 it is provided, that the proceeds arising from sales made by the board of trustees, of any school site or building shall be paid over to the treasurer.  It may, therefore, be assumed that the city scrip, and the proceeds of the city scrip, were in the hands of Lovingston, as treasurer, and that it was his duty to safely keep them, and appropriate them in such manner as was provided by law, or as might be directed by the board of trustees of the township.  He was authorized, as already stated, by section 62, to demand the money from the treasurer of the city of East St. Louis upon these city warrants.  That duty, it seems, he performed, and no charge or allowance is made for that service.

It is suggested by appellees, that it was his duty as treasurer to bring suit against the city, and collect the money by due course of law.  I find no provision in the statute requiring the treasurer to bring suits in behalf of the township, in all cases where suits may be necessary or proper.  He is required to do so in certain specified cases, but this case is not one.  Section 46 authorizes him to sue the county collector if he shall fail to pay over the amount of tax coming to his hands for school purposes of the township.  By section 60 the township treasurer is required to institute suits for the recovery of money or loans, in all cases where the borrower shall fail to give additional security, when additional security is required by the board of trustees.

And by the same section, whenever a debtor owing school money shall die, it is made the duty of the township treasurer to present the demand against his administrators or executors, and to attend the office of the probate justice on the proper days, and cause such debts to be properly probated and classed, so as to make them preferred debts. And by section 61 the township treasurer is authorized to bring suit for interest that may fall due upon a note or bond before the principal, without suing for the principal.

No other provision is found in this statute authorizing the treasurer to bring suits on his own motion, or at all. In all cases, other than the cases specifically provided for in the statute, (in which it was made the duty of the treasurer to bring suit, or in which he was specifically authorized to bring suit,) the question whether suit should or should not be instituted, is left by the law as a question to be determined by the board of trustees of the township, and not by the treasurer. The treasurer, on his own motion, had no authority to institute a suit in the name of the board of trustees, or otherwise, except in the cases specifically provided in the statute. He had, therefore, no authority to institute action against the city of East St. Louis for the collection of that money named in these city warrants, without an order of the board of trustees, nor is there any provision of the statute which imposes upon him the duty of negotiating the sale of these city warrants. The board of trustees might, had they chosen so to do, have authorized any other agent to negotiate such sale. It is true, when the sale was consummated,—the bargain made,—it might be necessary for the treasurer to indorse the certificates in order to perform the contract or sale.

I see no reason, if it was thought wiser by the board of trustees to procure this money through negotiations and sale of the city scrip than to incur the expense and delay of litigation with the city of East St. Louis, why it was not lawful for them to pursue that course, and I see no reason why they

might not employ Mr. Lovingston to perform that duty, as well as any other agent. It is not claimed, nor is there any evidence or allegation in this case, that the amount allowed for the services was unreasonably large, or that any officer in this connection acted in bad faith.

If all this be so, after the allowance was made by the board of trustees, and after Lovingston had accepted that amount as compensation, the money became that of Lovingston, and ceased to be that of the township. He no longer held it in his hands as treasurer.

But even if this were not so, it is provided by section 64, of the same statute, that "for any failure or refusal to perform the duties required of the township treasurer by law, he shall be liable to the board of trustees, * * * but if said treasurer, in any such failure or refusal, acted under and in conformity to a requisition or order of said board, entered upon their journal, and subscribed by their president and clerk, then, and in that case, the members of said board aforesaid, or those of them voting for said requisition or order aforesaid, and *not the treasurer*, shall be liable," etc.

In this case, Lovingston, in his failure to pay over the sum of money here claimed, "acted under and in conformity to an order of said board, entered upon their journal, and subscribed by their president and clerk," and acted in good faith. It is not perceived why this section 64 does not protect him as treasurer against any statutory liability as such arising out of such error, if it were error. If it does, his sureties are not liable for the error. If the allowance by the board was unlawful, and Lovingston made himself responsible as an actor, this affects him personally only, and can not affect his sureties.

It is suggested that Lovingston was not authorized to accept from the city of East St. Louis, for the amount due from that city on account of dram-shop licenses, city warrants, but should have demanded, originally, the money. Be this as it may, whatever default there was in accepting the

city warrants was a default that occurred in the discharge of his duty during his first term, and the facts were reported and known to the board of trustees before he entered upon his second term; for the case shows, that before that time he had been directed by the board of trustees to dispose of these city warrants. The sureties who signed his bond on the 4th of March, 1876, made themselves liable for his conduct during the term upon which he was then entering. They can not be held responsible for any default or official wrong which occurred before that time, unless Lovingston was guilty of some default in connection with the same transaction after the execution of the bond.

I think the judgment in this case is erroneous, and should be reversed.