## STATE *ex rel* M. F. SELLIGER *vs.* M. J. O'CONNOR.

Opinion filed June 15th, 1896.

**Constitutional Law—Taxation—Interstate Commerce.**

> Sections 1738-1743, both inclusive, of the Revised Codes, are unconstitutional and void so far as they attempt to tax persons engaged in the occupation of offering for sale by samples in this state goods to be shipped into it from another state, to fill the orders for goods so obtained. They are void as unlawfully interfering with interstate commerce. The statutes, being void as to such persons, are void as to all others, as it cannot be assumed that the legislature would have discriminated against the business interests of the state by passing a law imposing burdens upon such interests which would not affect similar business interests of nonresidents, the precise contrary being shown by the provisions of the act.

Petition by M. F. Selliger, for a writ of *habeas corpus*.

*Bangs & Fisk*, for petitioner.
*J. F. Philbrick, Asst. Atty. Gen.*, for defendant.

CORLISS, J. The District Court having refused to grant the petitioner a writ of *habeas corpus*, he has applied to this court for such writ. The application was made to the full bench on notice to the assistant attorney general, who appeared, and opposed the allowance of writ on the ground that the relator's petition showed that his detention by the defendant, as sheriff of Grand Forks County, N. D., was legal. It is conceded that the relator has set forth in such petition the facts relating to his imprisonment, which would be disclosed by the sheriff's return to the writ. Our conclusion that the writ should be issued will, therefore, in effect, settled upon the merits the legality of the detention of relator by defendant. The defendant holds him in custody under a commitment based upon his conviction by a justice of the peace for a violation of the provisions of section 1738, Rev. Codes. Such violation is, by section 1742, made a misdemeanor, and punishable by fine or imprisonment, or by both. These two sections constitute part of a license law relating to the occupations of peddling and of selling goods by sample in this state. Section 1738

provides as follows: "It shall be unlawful for any person to travel from place to place in any county within this state for the purpose of carrying to sell, or exposing or offering for sale, barter or exchange at retail, any goods, wares, merchandise, notions or other articles of trade whatsoever, except as hereinafter provided, whether by sample or otherwise, and whether such goods, wares, merchandise, notions or other articles of trade whatsoever, are delivered at the time of sale, or to be delivered at some future time, unless such person shall have first obtained a license as a peddler as hereinafter provided, but this article shall not prevent any manufacturer, mechanic, nurseryman or farmer from selling his work or production by himself, or any patent right dealer from selling his own invention, or to prevent any person from selling or offering to sell at wholesale to dealers only, any goods, wares or merchandise whatsoever, or to prevent train boys from selling to persons traveling on railroad trains, or to prevent any person who by reason of being blind or deaf and dumb is incapaticipated for hard manual labor, from selling goods, wares or merchandise on foot or with one horse and wagon, without a license." Section 1739 declares that the application for the license shall be made to the county auditor. Section 1740 fixes the fee to be paid. Section 1741 regulates the issuing of such licenses. Section 1742 prescribes the penalty for violation of the law. Whether the fee exacted as a condition of prosecuting the occupations specified in the statute can be regarded as strictly a license fee, or whether it must be held to be, in legal effect, a tax levied upon such occupations, we are not required to decide in this case. But, in view of the fact that no regulation of these occupations aside from the requirement that a fee should be paid, can be found in these sections, and that the fees exacted are larger than the expenses involved in the regulation of such occupations would seem to require, we are inclined to the view that the law can be sustained only as one providing for a tax upon such occupations. *City of St. Louis* v. *Spiegel*, 75 Mo. 146, and cases cited; *State* v. *Moore*, (N. C.) 18 S. E. 342;

*City of Burlington* v. *Putman Ins. Co.*, 31 Iowa, 102; *City of St. Paul* v. *Traeger*, 25 Minn. 248; *North Hudson Co. Ry. Co.* v. *Mayor, etc., of City of Hoboken*, 41 N. J. Law, 71; Cooley, Tax'n (2d Ed.) pp. 597-599; *Mayor, etc., of City of New York* v. *Second Ave. R. Co.* 32 N. Y. 261; *Laundry License Case*, 22 Fed. 701; *Brennan* v. *City of Titusville*, 153 U. S. 289, 14 Sup. Ct. 829. Whatever its character may be, it cannot be denied that within the decision of the Federal Supreme Court in *Brennan* v. *City of Titusville*, 153 U. S. 289, 14 Sup. Ct. 829, it is, so far as it assumes to tax those who sell by sample goods in other states, to be thereafter delivered, an unlawful interference with the exclusive authority of congress to regulate interstate commerce; and therefore is to that extent void. The court in that case said that it was immaterial whether the license fee which the city ordinance (the validity of which was involved in that case) required to be paid was considered as tax or as strictly a license fee. The court held that, as it was in fact a direct burden upon interstate commerce, it could not be enforced.

The statute assailed as unconstitutional in the case at bar in terms declares that all persons who offer for sale by sample any goods, wares, merchandise, or other articles of trade must take out a license, and pay the statutory fee therefor. It is obvious that this law cannot stand as it was enacted. All persons cannot be compelled to take out such license and pay such fee. Those who offer for sale by sample goods to be shipped from other states cannot be affected by its provisions. As to them it is void as an unlawful interference with interstate commerce. On what principle can it be sustained as to others? It is plain to our minds that if, after this law is thus emasculated, we should hold it good as to others within the purview of the statute, we would leave upon the statute book a law which the legislature never intended to enact; one which they would not have enacted. The effect of ruling that the statute would be valid as to those not protected by the article of the federal constitution relating to interstate commerce would be to leave standing an act which

would discriminate against the business interests of this state in favor of business enterprises in foreign jurisdictions. We cannot believe that such a law would have been enacted by the legislature. The legislature have declared that it is their will that this fee should be paid as a condition of engaging in the specified occupations only in case all persons save those specifically excepted should be subjected to the same burden. In *City of Titusville* v. *Brennan,* 22 At. 893, a city ordinance no broader in terms than the statute in question was held by the Supreme Court of Pennsylvania to embrace persons engaged in the business of selling by sample property in another state to be thereafter delivered. By excepting from the act certain classes, they have clearly manifested a purpose that all others should be subject to its provisions. Those who are so excepted are not those who are engaged in the business of selling by sample for foreign houses. When the legislature have declared in the most emphatic manner that these persons shall be included in the law, and that it is on that condition that the act is passed, it would be equivalent to creating a new statute by judicial decision for us to hold that it should nevertheless stand as to its other provisions after it had been adjudged void as to such persons,—a new statute, discriminating against the business interests of the state. In *Poindexter* v. *Greenhow,* 114 U. S. 270, 5 Sup. Ct. 903, 962, Mr. Justice Miller, speaking for the court, says, at page 304, 114 U. S., and pages 903, 962, 5 Sup. Ct.: "It is undoubtedly true that there may be cases where one part of a statute may be enforced as constitutional and another be declared inoperative and void because unconstitutional. But these are cases where the parts are so distinctly separable that each can stand alone, and when the court is able to see and to declare that the intention of the legislature was that the part pronounced valid should be enforceable, even though the other part should fail. To hold otherwise would be to substitute for the law intended by the legislature one they may never have been willing by itself to enact." See, also, opinion of Chief Justice Shaw in *Warren* v. *Mayor, etc.,* 2 Gray, 84; *Pollock* v.

*Trust Co.*, 158 U. S. 601-636, 15 Sup. Ct. 912; Cooley, Const. Lim., 177, 178, *et seq.*; *Randolph* v. *Supply Co.*, (Ala.) 17 South. 721, and cases cited. It is obvious from a study of the statute that the legislature intended that one of the conditions on which the license fee should be exacted from those who peddled or sold by sample goods already in the state was that those who solicited orders by sample for goods without the state should likewise be subject to the same burden. The portion of the act which violates the commercial article of the federal constitution is so inseparably interwoven with its other provisions as part of an indivisible scheme that we feel that it would be an unwarranted assumption of legislative power for the court to sustain those features of the law not repugnant to the federal constitution despite the fact that those other provisions of the act which are repugnant to the federal constitution must fail of legal effect. For the reasons above set forth chapter 85 of the Laws of 1895 is likewise unconstituted. The consequence is that the relator cannot be held under the statute. The conclusion we have reached renders it unnecessary for us to consider the other very interesting questions discussed.

The relator is entitled to the writ prayed for.