TAXATION OF OCCUPATIONS—HAWKERS AND PEDDLERS—
CONSTITUTIONAL LAW—INTERSTATE COMMERCE—UNI-
FORMITY.

1.  The power to raise revenue by taxation is a necessary attribute
of sovereignty, which may be exercised by the legislature subject only
to the restrictions imposed by the federal or the state constitution,
and includes the power to tax occupations.

2.  Neither the federal constitution nor 'the constitution of this
state inhibits the taxation of occupations.

3.  Chapter 165 of the Laws of 1903, entitled "An act taxing the
occupation of hawking and peddling," etc., is not open to the objection
that it authorizes a tax upon interstate commerce.

4.  The rule of equality and uniformity in taxation required by
section 176 of the state constitution applies only to taxes imposed
upon property as such, and does not apply to taxes imposed upon
occupations.

5.  The objection that a law which the legislature had the power
to enact will operate harshly goes merely to the policy of the law,
and not to its validity.  Such an objection should be addressed to the
legislature and not to the courts.

6.  Chapter 165 of the Laws of 1903 is a valid constitutional enact-
ment.

(Syllabus by the Court.)

IN RE LIPSCHITZ.

Application of M. Lipschitz for writ of habeas corpus.

Writ denied.

*Bosard & Bosard,* for petitioner.
*J. B. Wineman,* State's Attorney, for the State.

YOUNG, C. J.  The petitioner is in the custody of the defendant,
as sheriff of Grand Forks county, upon a judgment of conviction
for peddling without a license.  After having been refused a writ
of habeas corpus by the district court of that county, he applied to
this court for such writ, and the same was issued.  A written stipu-
lation was entered into by counsel for petitioner and counsel for
defendant in which the service of the writ and the presence of the
petitioner before the court was waived.  It was also agreed that
the facts alleged in the petition, including the information, judge's
minutes and commitment attached thereto, were true;  further,
that the only question as to the legality of defendant's confinement
is  the  alleged  unconstitutionality of Senate Bill No. 12 of the

Laws of 1903, entitled "An act taxing the occupation of hawkers and peddlers," etc., for violating which the defendant was convicted; and, further, that, in the event the court should hold said act to be constitutional, the writ should be quashed; and if, on the other hand, the act shall be held void, the writ shall be granted and defendant discharged. The petition alleges that the petitioner at the time of his arrest was "engaged in the business of peddling, bartering and exchanging goods, wares and merchandise within the county of Grand Forks, and for such purpose traveled from place to place in said county, carrying goods to sell, and offering and exposing goods to sell;" that he had no license from the auditor of said county; that he was informed against by the state's attorney of Grand Forks county, tried and convicted for violating the law entitled "An act taxing the occupation of hawkers and peddlers, regulating the licensing of persons engaged in such occupation, increasing the ordinary county revenue by such taxation, and prescribing penalties for the violation of its provisions," entitled "Senate Bill No. 12 of the Laws of 1903," and approved with an emergency clause on March 2, 1903; that the alleged unlawful act committed by him is not a public offense for the reason that said law is unconstitutional, and that his detention is therefore unlawful. The act in question consists of nine sections. Section 1 provides that "it shall be unlawful for any person to travel from place to place in any county of this state, for the purpose of carrying to sell, or exposing or offering to sell, barter or exchange any goods, wares, merchandise or any other property whatever, without first obtaining a license therefor from the auditor of said county." Sections 2, 3, 4 and 5 regulate the application for the license, prescribe the amount to be paid for the license, and provide for its issuance and recording by the county auditor. Section 6 provides that "all money paid into the county treasury under the provisions of this act, shall be placed to the credit of the ordinary county revenue, including the support of the poor, to be disbursed in the same manner as the funds derived from the usual course of taxation for such account." Section 7 makes a violation of the act a misdemeanor, punishable by a fine not exceeding $50, or by imprisonment not exceeding thirty days. Section 8 reserves to incorporated cities, towns and villages all existing rights to license and regulate peddlers within their corporate limits, and section 9 repeals all inconsistent acts.

By this act the legislature has attempted to tax the occupation of hawking and peddling. The first question which arises relates to the power of that body to tax occupations. This question must be resolved in favor of the existence of such power. It must be conceded that the power to raise revenue by taxation is a necessary attribute of sovereignty, which may be exercised by the legislature subject only to such restrictions or limitations as are imposed by the state or federal constitution; and, further, that the legislature, in exercising this power, and in selecting subjects for taxation, is not confined to property, but may also tax occupations. Neither the federal constitution nor the constitution of this state forbid the taxing of occupations. It cannot be questioned, therefore, that the legislature, in this absence of constitution inhibition, has the undoubted right to tax the occupation of peddling. This is not debatable. The authorities, both state and federal, are unanimous to the effect that "a state legislature may tax trades, professions and occupations in the absence of inhibition in the state constitution in that regard." Ficklen v. Taxing District of Shelby Co., 145 U. S. 1, 12 Sup. Ct. 810, 36 L. Ed. 601; Standard U. Cable Co. v. Attorney General, 46 N. J. Eq. 270, 19 Atl. 733, 19 Am. St. Rep. 394; People v. Coleman et al., 4 Cal. 46, 60 Am. Dec. 581; Cooley on Tax'n, 570. See, also, cases cited 21 Am. & Eng. Enc. Law (2d Ed.) 776, under note 7.

Counsel for petitioner rely chiefly upon grounds which were involved in and considered in State v. O'Connor, 5 N. D. 629, 67 N. W. 824, and State v. Klectzen, 8 N. D. 286, 78 N. W. 984, in which cases two prior acts licensing hawkers and peddlers were declared void by this court. In State v. O'Connor, chapter 142, p. 430, Laws 1890, amended and re-enacted in the Revised Codes of 1895 as sections 1738 to 1743, inclusive, was held void for the sole reason that the license tax imposed by that act was an unlawful interference with interstate commerce; following Brennan v. City of Titusville, 153 U. S. 289, 14 Sup. Ct. 829, 38 L. Ed. 719. It is claimed that the act under consideration is void for the same reason. We are of opinion that it is not open to this objection. The act of 1890 not only exacted a license fee from persons who traveled about from place to place within the state carrying goods with them for delivery, but also in plain terms included persons who offered to sell goods, "whether by sample or otherwise, and whether such goods, wares, merchandise, notions or other articles of trade whatsoever, are delivered at the time of sale, or to be delivered

at some future time." Mr. Justice Corliss, who delivered the opinion of the court in the above case, said that upon the authority of Brennan v. City of Titusville, supra, the act "is, so far as it assumes to tax those who sell by sample goods of other states, to be thereafter delivered, an unlawful interference with the exclusive authority of congress to regulate interstate commerce, and therefore is, to that extent, void. * * * The statute * * * declares that all persons who offer for sale by sample any goods, wares, merchandise or other articles of trade must take out a license and pay the statutory fee therefor. It is obvious that this law cannot stand as it was enacted. All persons cannot be compelled to take out such license and pay such a fee. Those who offer for sale by sample goods to be shipped from other states cannot be affected by its provisions." That this is a correct interpretation of the act then under consideration, and also a correct statement of the law applicable thereto, cannot be doubted. The present act, however, does not come within either the letter or the spirit of the above case. It does not in fact place a tax or burden upon interstate commerce. On the contrary, it relates entirely to commerce within the state. It does not include persons soliciting sales of goods by sample for future delivery, as did the former act. It will be noticed by reference to section 1 that this act only includes persons traveling from place to place carrying goods to sell, etc. The objectionable provisions of the 1890 act, above quoted, imposing a license upon those who sold by sample for future delivery, and for which reason alone that act was held invalid, are not contained in the present act. In Emert v. Missouri, 156 U. S. 296, 15 Sup. Ct. 367, 39 L. Ed. 430, a statute of Missouri, which required every peddler to procure a license and pay a tax therefor, and imposed a penalty for peddling without a license, was held, after an extended review of the federal authorities, not to be repugnant to the power given to congress to regulate commerce "as applied to a peddler within the state of sewing machines made in another state by a corporation of that state, and sent by it to him to sell on its account and as its agent." In State v. Montgomery, 92 Me. 433, 43 Atl. 13, the hawkers' and peddlers' act of 1889 of that state (Laws 1889, c. 298) was held valid against the objection we are now considering. The court said: "Nor is the license fee prescribed by the statute a tax upon interstate commerce. The statute has no reference to the business of soliciting orders for, or offering for sale, property situated without the state, to be followed by a transfer

of the goods from one state to another, as was the case in Brennan v. Titusville, supra; Crutcher v. Kentucky, 141 U. S. 47 (11 Sup. Ct. 851, 35 L. Ed. 649); Robins v. Shelby Co., 120 U. S. 489 (7 Sup. Ct. 592, 30 L. Ed. 694); Corson v. Maryland, 120 U. S. 502 (7 Sup. Ct. 655, 30 L. Ed. 699)— all of which cases were cited by the defendant. The statute contemplates the business of an itinerant peddler, going about from place to place, having his goods with him, exposing them for sale, selling them. Unless he has them with him, he cannot expose them for sale; he cannot sell them, within the meaning of the statute. The goods, if ever without the state, were within the state when exposed for sale, and thus had ceased to be the subject of interstate commerce. By breaking the packages, and traveling with them as an itinerant peddler, the owner or possessor had mixed them with the general property of the state. Brown v. Maryland, 12 Wheat. 419 [6 L. Ed. 678]. The distinction is clearly pointed out in Emert v. Missouri, supra, page 311 [156 U. S., page 370, 15 Sup. Ct. 370, 39 L. Ed. 430]. Emert was the agent of the Singer Manufacturing Company, a New Jersey corporation, which had forwarded to him in Missouri the machines in question, and which it was alleged he unlawfully sold, in violation of the peddlers' license law of that state. The court said: "There is nothing in this case to show that he [the peddler] ever offered for sale any machine that he did not have with him at the time. His dealings were neither accompanied nor followed by any transfer of goods, or of any order for their transfer from one state to another; and were neither interstate commerce within themselves, nor were they in any way directly connected with such commerce. The only business or commerce in which he was engaged was internal and domestic; and, as far as appears, the only goods in which he was dealing had become part of the mass of property within the state. Both occupation and the goods, therefore, were subject to the taxing power and to the police power of the state.' The goods which this defendant is complained of for exposing for sale had been received by him within this state. He had broken the packages. He was traveling with them as a peddler. They had become a part of the general mass of property in the state. Hence a statute regulation of their sale would not be a regulation of interstate commerce." It is clear that persons engaged in the occupation of peddling as described in section 1 of the present act are not engaged in interstate commerce. The persons pursuing such occupation and the subject

of their sales are within the jurisdiction of the state, and in no sense can it be said that a tax imposed upon their occupation is an interference with interstate commerce.

It is also urged that the act violates section 176 of the state constitution, which provides that "laws shall be passed taxing by uniform rule all property according to its true value in money." This contention cannot be sustained. The rule of uniformity required by this section of the constitution does not apply to taxes imposed upon occupations. The same contention was urged in the case of State v. Klectzen, supra, in which case chapter 118, p. 185, Laws 1899, was held void, and was overruled. The invalidity of the 1899 act was placed upon the single ground that it violated section 175 of the constitution in this, that it did not state the purpose to which the tax was to be applied. This defect is cured in the present act by section 6, previously quoted. In affirming that section 176 does not apply to an occupation tax, this court, speaking through Mr. Justice Wallin, said: "In my judgment, the act under consideration, in so far as it may be called a tax, is an occupation tax, framed to derive a revenue from the occupation of peddling, and hence the same is not restricted by the constitutional requirement of valuation and of uniformity." The correctness of the above holding is directly challenged in this case. It is contended that the tax imposed is, in effect, a tax upon the goods sold by the peddler—that is, that it is upon property—and that section 176 is therefore applicable. The unanimous voice of authority is against this contention. The courts are in entire harmony in holding that the constitutional requirement of uniformity and equality embodied in this section applies only to taxes imposed upon property as such, and that an occupation tax is not a tax upon property within the meaning of this and similar constitutional provisions. In Aulanier v. The Governor, 1 Tex. 653, the court, in construing a constitutional provision of that state which required that "taxation shall be equal and uniform throughout the state; all property in this state shall be taxed in proportion to its value," etc., said that the word 'property,' as used in the constitution, cannot by any forced construction be tortured into meaning an occupation, calling or profession." So, also, the supreme court of California, in People v. Coleman, 4 Cal. 46, 60 Am. Dec. 581, in construing a constitutional provision which required that "taxation shall be equal and uniform throughout the state," held that the provision did not operate as a limitation of the

taxing power of the legislature, and apply to every species of tax, but that it applied "only to direct taxation on property as such," and further, that the legislature might, in its discretion, discriminate in the imposition of taxes on certain classes of persons, occupations or species of property, taking some and exempting others. Likewise, the supreme court of Kansas in re Martin ,62 Kan. 638, 64 Pac. 43, after a review of the authorities, said, in reference to a license tax, that: "The express constitutional restrictions as to equality and uniformity of rate do not apply and the amount of the tax as well as the method of imposing it is left to legislative judgment and discretion." In Johnson v. Loper, 46 N. J. Law, 321, a license tax was assailed as repugnant to the "constitutional requirement that property shall be assessed under general laws and by uniform rules, according to its true value." The court said: "The constitutions of other states contain provisions analogous to the requirements contained in ours, and wherever the courts have been called upon to construe them in regard to their application to assessments upon occupations in the form of license fees they have been held inapplicable to the latter class of imposts. The almost, if not quite, unbroken course of decision has been in this direction; that these impositions are not taxes within the purview of the constitutional requirements"—citing numerous authorities. In Glasgow v. Rowse, 43 Mo. 479, it was held that a constitutional requirement that taxation upon property shall be in proportion to its value does not include every species of taxation, and that a tax upon incomes did not come within the term "property" as used in the constitution. So, also, it was held in the case of Knisely v. Cotterel, 196 Pa. 614, 46 Atl. 861, 50 L. R. A. 86, that a tax upon the business of vending merchandise was not a tax upon property, but upon an occupation, and that it did not violate the constitutional requirement that "all taxes shall be uniform." In Marmet v. State, 45 Ohio St. 63, 12 N. E. 463, the court, in construing the uniformity provision of the constitution of that state, said that the requirement was simply that taxes upon property as such shall be by uniform rule, and that it did not impair the power of the legislature to use its discretion when the burden was not placed upon property. So, also, it was held in Illinois that a license tax is not a tax in the constitutional sense, and that it does not, therefore, violate the constitutional requirement as to equality and uniformity. Lovingston v. Board, 99 Ill. 564; Wiggins Ferry Co. v. City of East St. Louis, 102 Ill. 560;

Walker v. City of Springfield, 94 Ill. 364; State v. French, 17 Mont. 54, 41 Pac. 1078, 30 L. R. A. 415—are to the same effect. See, also, 21 Am & Eng. Enc. Law (2d Ed.) 802, and cases collated by states at note 9; Home Insurance Co. v. City of Augusta, 50 Ga. 530; Western Union Telegraph Co. v. Mayer, 28 Ohio St. 521. In this state it has been held that section 176 does not even apply to all classes of taxes upon property. In the case of Rolph v. City of Fargo, 7 N. D. 640, 76 N. W. 242, 42 L. R. A. 646, this court, in harmony with the weight of authority, held that this provision of our state constitution "relates exclusively to general taxation, and has no reference to local assessments." See cases cited on page 652 of opinion (7 N. D., page 245, 76 N. W. 245, 42 L. R. A. 646); also Cooley on Taxation, pp. 626 to 636; 2 Dillon on Munic. Corp. 761, and cases cited. Counsel rely upon Welton v. Missouri, 91 U. S. 275, 23 L. Ed. 347, in which it was said that a license tax exacted from a peddler was, in effect, a tax upon the goods themselves. The case is not in point. The language was used in reference to the effect an occupation tax would have upon interstate commerce. The same court, in a later case—Ficklen v. Taxing District of Shelby Co., 145 U. S. 1, 12 Sup. Ct. 810, 36 L. Ed. 601—in considering the same question, said: "This tax is not on the goods or on the proceeds of the goods." In neither case, however, was the constitutional rule of equality and uniformity of taxation under consideration. The question involved was the right of a state to impose an occupation tax upon persons residing therein for the privilege of engaging in interstate commerce. As already stated, in all cases, so far as we are able to learn, in which the rule of equality and uniformity contained in section 176 and kindred constitutional provisions was involved, it has been held that the rule does not apply to a tax imposed upon occupations.

Finally, it is urged that the law is "unreasonable and unjust," and should, for that reason, be declared void. This objection goes to the policy of the law, and not to its validity. The fact that a law may be harsh in its operation does not defeat the power of the legislature to enact it. This objection should be addressed to the legislature, and not to the courts. The occupation of hawking and peddling has existed for centuries, and the power of the legislature to tax it is well established. Whether the scope of this act broadens the occupation so as to include persons not formerly included, we do not determine. The petitioner is not in

a debatable class.   On the question as to what persons are subject to the provisions of the act, Commonwealth v. Gardner, 133 Pa. 284, 19 Atl. 550, 7 L. R. A. 666, 19 Am. St. Rep. 645, and note, Davenport v. Rice, 75 Iowa, 74, 39 N. W. 191, 9 Am. St. Rep. 454, and Davis & Company v. The Mayor, 64 Ga. 128, 37 Am. Rep. 60, will be found instructive.

(95 N. W. 160.)